EDWARD FENN *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF SEYMOUR
(9276)

DALY, NORCOTT and FOTI, Js.

Argued January 14—decision released April 16, 1991

---

*Richard P. Gilardi,* with whom was *Richard S. Bruchal,* town attorney, for the appellants (named defendant et al.).

*Joseph E. Sakal,* for the appellee (plaintiff).

NORCOTT, J. This is an appeal from the judgment of the trial court sustaining an appeal by the plaintiff property owner, Edward Fenn, from the action of the defendant Seymour planning and zoning commission denying him a change of zone. The commission and the defendant neighboring property owners have joined in the present appeal, claiming, in essence, that the trial court exceeded its authority and wrongfully substituted its opinion for that of the commission.

The facts necessary to the understanding of this case are not in dispute. This appeal arises out of the commission's denial, for the second time, of a petition to change the designation of a .678 acre parcel of land located on a residentially zoned street, designated R-15, to a multidwelling townhouse zone, R-TH. This piece of land adjoins a twenty-five acre parcel that is zoned R-TH on which townhouses may be built.

In 1975, the commission designated a large tract of land located on Bank Street[1] in Seymour as a townhouse district. The tract was mushroom shaped with

---

[1] Bank Street is also commonly known as Route 67.

twenty-five acres landlocked except for a stem shaped parcel 130 feet wide fronting Bank Street, which provided an obvious access to the larger tract. Initially, a single family owned this entire tract.

In 1985, the subsequent owners of this property sold a major portion of the parcel fronting Main Street to commercial developers; they contracted to sell the rest to the plaintiff for townhouse development. The contract for the sale of this property included a large 24.5 acre parcel zoned R-TH and the .678 acre lot which is the subject of the present appeal, zoned R-15 and located along a residential street, Woodside Avenue. The sale did not include the 130 foot lot fronting Bank Street.

In 1986, upon application by the owners of the 130 foot parcel fronting Bank Street, a 100 foot section of this land was rezoned from "Townhouse District" to "Commercial District." The owner immediately sold this 100 foot piece to a commercial group for the construction of a commercial building. The owner retained the remaining thirty foot wide parcel, together with a twenty foot wide easement, which still provided direct access to the larger twenty-five acre tract.

At this time, the owner and Fenn applied to the planning and zoning commission for a change of zone to R-TH for the residentially zoned .678 acre parcel. Their intent was to use the property as an access to the larger twenty-five acre parcel. The commission denied the application reasoning that to grant it (1) would create "spot zoning" and (2) would not be in conformance with the residential character of Woodside Avenue. Fenn did not appeal. Subsequently, Fenn submitted a townhouse site plan for the construction of 120 townhouse units to the Seymour zoning board of appeals. The site plan reflected that access to the twenty-five acre lot would be via a road over the .678 acre piece of prop-

erty. The board approved the site plan along with several variances. On appeal from the board's order, the trial court upheld the variances but sustained the appeal and declared the site plan approval a nullity because the site plan included land that was not zoned R-TH.[2] Thereafter, in June, 1988, Fenn finalized the purchase of the twenty-five acre parcel of land but did not purchase the portion of land that was still zoned residential and opened onto Bank Street.

On August 26, 1988, Fenn again applied to the planning and zoning commission seeking a zone change to R-TH for the .678 acre parcel which he sought once again to use as an access to the twenty-five acre lot.[3] After holding extensive hearings on November 10 and December 15, 1988, and taking a walking tour of the site, the commission denied the application because of (1) its previous denial of a similar request on the basis of nonconformity to the residential character of Woodside Avenue and the lack of a subsequent change in the residential character, and (2) its interpretation of § 12.2 (A) of the Seymour zoning regulations. From that decision, Fenn appealed to the trial court which sustained the appeal, concluding that "the [commission] should not have applied the restrictive 'change of condition' rule to its vote. It should have considered the whole picture in acting in its legislative capacity. Its failure to do so was arbitrary, illegal and an abuse of its discretion." The court also concluded that, since the .678 acre parcel was going to be used only for access and not for townhouse development, § 12.2 (A) did not

---

[2] The appeal from the board's order was entitled *Llewellyn* v. *Zoning Board of Appeals,* Superior Court for the judicial district of Ansonia-Milford, Docket No. CV87-0021705S (May 3, 1988). The trial court was the same as in the present appeal.

[3] During the interim, Fenn had unsuccessfully submitted another site plan to the zoning board of appeals showing a different access.

apply to it.[4] The defendants appeal from the decision of the trial court.

The defendants rest their appeal on their claims that the trial court (1) substituted its judgment for that of the commission, and (2) wrongfully sought and found an unexpressed intent in § 12.2 of the zoning regulations that is clear and unambiguous on its face. We agree.

The standards governing judicial review in zoning appeals are well settled. A court cannot substitute its judgment for the liberal discretion accorded to local zoning authorities in the exercise of their prescribed legislative powers. *Burnham* v. *Planning & Zoning Commission,* 189 Conn. 261, 266, 455 A.2d 339 (1983). On appeal, the court may disturb that decision only where the local authority has acted illegally or arbitrarily or has abused its discretion. *Frito-Lay, Inc.* v. *Planning & Zoning Commission,* 206 Conn. 554, 573, 538 A.2d 1039 (1988). "The courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution. *Stiles* v. *Town Council,* 159 Conn. 212, 219, 268 A.2d 395 (1970)." *Burnham* v. *Planning & Zoning Commission,* supra. When a trial court reviews a decision made by an administrative body in its legislative capacity, the court must not retry the case. "Conclusions reached by the

---

[4] With respect to the noncompliance with the zoning regulations, the court wrote: "It is obvious that the restrictions in § 12.2 of the zoning regulations were enacted so that townhouses could be built only on a large tract of land and at a long distance from other multidwelling construction. However, the only purpose the property in question is going to be used for is an access road to the 24.557 acre piece where the townhouses were to be built. Section 12.2 does not apply to a small piece of land on which a townhouse development is not to be built. The defendant's action in applying § 12.2 to the parcel in question is arbitrary, illegal and in abuse of its discretion."

commission must be upheld by the trial court if they are reasonably supported by the record." *Burnham* v. *Planning & Zoning Commission,* supra, 265. Applying these standards to the present case, we conclude that the trial court improperly determined that the commission's decision was illegal, arbitrary and an abuse of its discretion.

The commission first denied Fenn's application for a zone change for the .678 acre parcel in 1986, deciding that to grant the change would be to allow impermissible spot zoning. See *Kimball* v. *Court of Common Council,* 148 Conn. 97, 101, 167 A.2d 706 (1961). In 1988, upon reapplication by Fenn for the same zone change, the commission found that there had been no substantial change in the circumstances present when it had denied Fenn's application in 1986. Specifically, the commission found that no substantial change had occurred in the residential character of the area and that the concerns it had raised in 1986 remained viable. These concerns included the impact on traffic and the fact that, despite his representations to the contrary, Fenn could build townhouses at his own discretion in the newly zoned lot. The plaintiff now urges us to agree with the trial court's finding that the commission's reasoning was arbitrary, illegal and abusive of its discretion. This we cannot do.

An administrative body, acting in a legislative capacity, is not bound by the general rule that prohibits it from reversing an earlier decision without evidence of a change in conditions. *Morningside Assn.* v. *Planning & Zoning Board,* 162 Conn. 154, 158, 292 A.2d 893 (1972); *Loh* v. *Town Plan & Zoning Commission,* 161 Conn. 32, 39, 282 A.2d 894 (1971). Here, the commission, in the exercise of this discretion, declined to reverse itself, and, after receiving a wealth of evidence, concluded in effect that there was no substantial change in the situation from that extant in 1986. The trial court's concern with the possible landlocking of the

twenty-five acre lot is understandable. We do not agree with the court, however, that the commission did not consider "the whole picture in acting in its legislative capacity." What we find in the record is that the court's conclusions were contrary to those of the commission. The record, which reveals much contradictory evidence concerning traffic patterns in the area, the plaintiff's self-created dilemma, and the viability of various accesses to the twenty-five acre lot, belies the finding of the trial court that the commission did not consider the entire picture. The action of the trial court was tantamount to an impermissible substitution of its judgment for that of the commission. See *Burnham* v. *Planning & Zoning Commission,* supra, 266.

Furthermore, in making its decision regarding a zone change, a zoning agency must consider the general public welfare inherent in the comprehensive zoning development plan rather than the individual benefit of one petitioner. See *Kimball* v. *Court of Common Council,* supra. The record here evinces that the commission acted with the intention of promoting the best interests of the community and that its actions were in harmony with its regulations and the comprehensive plan. See *Morningside Assn.* v. *Planning & Zoning Board,* supra, 162. As such, its actions cannot be deemed arbitrary or illegal. Inherent in both the 1986 and the 1988 denials of Fenn's applications for a zone change is the commission's finding that to allow the change would create spot zoning. "Spot zoning has been defined as 'a provision in a zoning plan or a modification in such a plan, which affects only the use of a particular piece of property or a small group of adjoining properties and is not related to the general plan for the community as a whole.' Maltbie, 'The Legal Background of Zoning,' 22 Conn. B.J., pp. 2, 5." *Kimball* v. *Court of Common Council,* supra, 102.

The trial court here also concluded that the commission had misinterpreted its own regulations, namely §§ 12.2 and 2-1,[5] finding that those sections did not apply to a small piece of land (the .678 acre parcel) on which townhouse development was never intended to be built. The court seemed to accept the plaintiff's assertion that he would use the land only for access. It is axiomatic that courts should give deference to the construction of the ordinance by the agency charged with its enforcement. *New Haven* v. *United Illuminating Co.*, 168 Conn. 478, 493, 362 A.2d 785 (1975). In the present case, the commission construed the plain language of § 12.2 and concluded that the requested zone change was not warranted. Our review supports this conclusion.

The commission here reasonably exercised its honest judgment based on all of the evidence it had heard. "The action of the commission should be sustained if even one of the stated reasons is sufficient to support it. *Goldberg* v. *Zoning Commission*, 173 Conn. 23, 25, 376 A.2d 385 (1977)." *Burnham* v. *Planning & Zoning Commission*, supra, 265.

The judgment is set aside and the case is remanded with direction to render judgment dismissing the appeal.

In this opinion the other judges concurred.

---

[5] Section 12.2 provides: "No tract of land shall be considered for multi-family townhouse development unless it meets the following minimum qualifying standards: (a) Tract shall consist of at least 15 contiguous acres under single ownership or control. Maximum tract would be 200 acres. No townhouse development shall be located within 1,000 feet of any other townhouse, or garden apartment development measured at nearest boundaries. . . ."

Section 2.1 provides: "Development. Means any manmade change to improved or unimproved real estate, including but not limited to buildings or other structures, mining, dredging, filling, grading, paving, excavation or drilling operations located within the area of special flood hazard."