[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal pursuant to Conn. Gen. Stat. 8-8, from the decision of the East Lyme Zoning Commission denying plaintiffs' request for a change of zone for a portion of their property. The plaintiffs, Joshua M. Fiero and his wife, Bette J. Fiero, are the owners of property located on the east side of Chesterfield Road, identified as Lot 23 on East Lyme Property Map 49, in the Town of East Lyme. The subject property is located in an RU-40 residence zone. It is bordered to the south by commercially zoned property and to the north by residentially zoned property. The two properties adjoining plaintiffs' property to the south, identified on Assessor's Map 49 as Lots 24 and 24a, were rezoned from RU-40 residential to CA commercial on June 5, 1986.
The subject property extends in an easterly direction until it reaches Latimer Brook. Across the street to the west is East Lyme High School which is zoned partly residential and partly commercial. By letter dated July 19, 1990, the plaintiffs applied for a reclassification to a commercial CA zone for the front portion of their property, applicable only to the first 125 to 130 feet in depth from the frontage along Chesterfield Road.
A public hearing concerning plaintiffs' application for the subject zone change was conducted at the East Lyme Town Hall on October 4, 1990. On October 18, 1990, the commission voted to deny plaintiffs' request by a vote of three to two. It is from this decision that the plaintiffs appeal.
Conn. Gen. Stat. 8-8 allows aggrieved persons to appeal from decisions of zoning authorities to the Superior Court. "The appeal will be dismissed unless the appellant alleges and proves CT Page 9115 aggrievement." Smith v. Planning Zoning Board, 203 Conn. 317,321 (1987). The owner of the property in dispute is considered aggrieved. See Bossert Corporation v. Norwalk, 157 Conn. 279,284 (1968); see also Winchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303, 308 (1991).
The return of record in the present case contains the warranty deed whereby the plaintiff, Joshua M. Fiero, III, acquired the subject property in 1977. It also contains the quitclaim deed whereby the plaintiffs became joint owners with a right of survivorship. The plaintiffs are aggrieved.
A party taking an appeal must do so by commencing service of process within fifteen days from the date that notice of the decision was published. Conn. Gen. Stat. 8-8 (b). The appeal shall be returned to the court in the same manner and within the same periods of time as prescribed for civil actions brought to that court. The zoning commission's decision was published on October 26, 1990. The defendant Zoning Commission c/o East Lyme Town Clerk, Esther Williams, was served on November 8, 1990. The defendant Zoning Commission c/o Commission Chairman, John O'Neil, was served on November 10, 1990. This appeal was timely brought.
A trial court is not at liberty to substitute its judgment for that of the administrative tribunal. See Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554, 572-73 (1988). The court is only to determine whether the agency has acted illegally, arbitrarily or in abuse of its discretion. Raybestos-Manhattan, Inc. v. Planning Zoning Commission,186 Conn. 466, 470 (1982). The court is simply to determine whether the record reasonably supports the conclusions reached by the agency. Primerica v. Planning Zoning Commission, 211 Conn. 85,96 (1989).
Plaintiffs first argue that they were not accorded a fair hearing due to the participation at the hearing by Commissioners DeSanto, Pappas and Peck, all of whom voted against the plaintiffs. According to the plaintiffs, the above three commissioners, as well as zoning enforcement officer, William Mulholland, and Chairman of the Zoning Board of Appeals, Pete Hunt (appearing only out of general interest and not on behalf of the Board), were biased and participated in the hearing even though a conflict of interest existed.
Conn. Gen. Stat. 8-11 provides, in pertinent part, that "[n]o member of any zoning commission or board and no member of any zoning board of appeals shall participate in the hearing or decision of the board or commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense." Neutrality and impartiality CT Page 9116 of members are essential to the fair and proper operation of a planning and zoning commission. Cioffoletti v. Planning Zoning Commission, 209 Conn. 544, 553-54 (1989).
At no time during the public hearing, did the plaintiffs raise the question of a potential conflict of interest. The court cannot consider these claims at the present time. In Finkenstein v. Administrator, 192 Conn. 104, 114 (1984), the Supreme Court stated:
 We have recently expressed our disinclination to address matters not properly raised in the administrative forum and we reaffirm the principle that we will not set aside an agency's determination upon a ground not theretofore fairly presented for its consideration because such action on our part would deprive the agency of an opportunity to consider the matter, make its ruling, and set forth the reasons for its action.
See also Ancona v. Norwalk, 217 Conn. 50, 54 n. 6 (1991); Hartford Electric Light Co. v. Water Resources Commission, 162 Conn. 89,107 (1971); Valley View Convalescent Home, Inc. v. Commission on Hospitals, 32 Conn. Sup. 300, 302 (C.P. 1975).
The plaintiffs may not raise the issue of potential conflicts of interest for the first time in this administrative appeal.
Three reasons were given by the commission in denying the plaintiffs' application: (1) that it is not in the best interests of the town and is not consistent with the Plan of Development; (2) that it would allow more commercial development in a primary aquifer; and (3) that extending the zone would be contrary to the intent of the existing zone. The plaintiffs challenge each of the above reasons as being unsupported in the record. However, if any one of the reasons given is sufficient to warrant the action of the commission, the plaintiffs must fail in their appeal. Zygmont v. Planning Zoning Commission,152 Conn. 550, 553 (1965) see also Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554, 576 (1988).
"[A] local zoning authority, in enacting or amending its regulations, acts in a legislative rather than an administrative capacity." Parks v. Planning Zoning Commission, 178 Conn. 657,660 (1979). Acting in such capacity, the local board is vested with much broader discretion than an administrative board, which CT Page 9117 serves a quasi-judicial function.
The test of the action of the commission when considering a zone change application is two-fold: (1) the zone change must be in accord with a comprehensive plan, General Statutes 8-2, and (2) it must be reasonably related to the normal police power purposes enumerated in 8-2. First Hartford Realty Corporation v. Plan Zoning Commission, 165 Conn. 533, 541 (1973). "[I]n making its decision regarding a zone change, a zoning agency must consider the general public welfare inherent in the comprehensive zoning development plan rather than the individual benefit of one petitioner." Fenn v. Planning Zoning Commission, 24 Conn. App. 430,436 (1991); see also Kimball v. Court of Common Council,148 Conn. 97, 101-02 (1961). A comprehensive plan is a general plan to control and direct the use and development of property in a municipality by dividing it into districts according to the present and potential use of the property. First Hartford Realty Corporation v. Plan Zoning Commission, 165 Conn. at 541.
One of the reasons given by the commission in denying the plaintiffs' application is the concern about more commercial development in a primary aquifer. The record reflects the fact that the subject property is located in a primary aquifer protection zone. The stated purpose of section 13 of the East Lyme Zoning Regulations, which designates aquifers and recharge areas, is to "impose . . . controls in the interest of public health, safety and general welfare, and to preserve the quality and quantity of the Town's ground water resources in order to ensure a safe and healthy water supply."
The record reflects the fact that the Commission carefully considered further commercial development in the primary aquifer protection zone. By letter dated September 25, 1990, Barbara M. Brown, Chairman of the East Lyme Planning Commission, informed John J. O'Neil, Jr. Chairman of the East Lyme Zoning Commission, that the Planning Commission was opposed to plaintiffs zone change application, stating that "expansion of the commercially zoned area in a primary aquifer protection zone is contrary to the Plan of Development and represents an extension of strip commercial zoning." Mr. Pappas stated during the commission's deliberations that "I'm concerned when you're talking about a primary aquifer zone. I believe Mr. Fiero in his testimony . . . said the DOT said there were three spills recorded. One was from the high school . . . I'm concerned if people put two of these lots together we might have something a little bit bigger to deal with in the primary aquifer zone."
The record supports the commission's decision not to extend the commercial development in the primary aquifer zone. CT Page 9118
Another reason given by the commission in denying the plaintiffs' application is that extending the zone would be contrary to the intent of the existing zone. The plaintiffs initially challenge this reason as being too ambiguous, in that it is unclear if the "existing zone" refers to the RU-40 zone or the CA commercial zone. The deliberations make clear that the concern involves extending the commercial zone into the residential zone. Commissioner DeSanto stated at that meeting that:
 [T]he proposal in my opinion is contrary to the intent of past zoning Commissions. That doesn't mean we have to go by what was done before. We're talking about considerations. I know the past history of intent of our zoning regulations is to create a town that has distinct neighborhoods which were commercial and residential and there was a conscientious effort by earlier zoning commissions to concentrate commercial development along sections along 161 but not make it a continuous strip. This adds on a little bit . . . [T]herefore I think that this is contrary to the overall intent of zoning in East Lyme and in particular I think it is also contrary to the presently adopted plan of development which clearly indicates the centers of development and does not suggest extending . . . commercial zone up 161.
The purpose of the RU-40 zone is "to encourage low density residential development." Concern was expressed during the deliberations about allowing further "strip zoning" in a northerly direction along Route 151, contrary to the existing zoning regulations. Commissioner DeSanto stated during the deliberations that:
 I believe it was Mr. Fiero who mentioned that the zone was clearly moving up Route 161. I don't think anyone would disagree with that. Mr. Fiero's proposal is to move it up one more property. He feels that the logical place to end it is beyond the entrance to the high school. I don't see . . . why that's any more logical than ending it someplace else. The existing zoning proposes the residential line there. Mr. Fiero's property is just CT Page 9119 over that line, he's in residential. If his property is rezoned, then the next property over the line is similarly defined as residential . . . [T]he zone might be moved up further . . If there are going to be zone changes I personally prefer thinking of deepening the zone rather than strip zoning. . .
The record supports a conclusion that to further extend the commercial zone into the residential zone would be contrary to the intent of the existing residential zone.
The final reason given by the commission in denying the zone change application is that the zone change is not in the best interest of the town. The plaintiffs challenge this reason as "too broad, vague, general and indefinite" to be a valid reason. The record supports the conclusion that it would not be in the town's best interest to approve the zone change.
The commission considered a letter opposing the zone change from Mr. and Mrs. Edwin C. Higgins, Jr., who reside at 78 Chesterfield Road. The letter stated:
 The continuous evolution of the Route 161 corridor, extending south from the Flanders Four Corners, into a commercial "strip" region is readily apparent to any residents who regularly travel between Niantic and Flanders.
 The attendant increased vehicular traffic and deteriorating safety conditions along Route #161 are serious concerns which serve to underscore the importance of ensuring that this commercialization does not continue any further north along Chesterfield Road.
 The immediate proximity of the subject property to the main entrance to the East Lyme High School poses a very serious potential traffic problem in the event the Commission were to, now, concede and reclassify this property from residential to commercial. The passage of time since Mr. Fiero's most recent application for a zone change certainly has not witnessed any lessening of vehicular traffic congestion in this area.
CT Page 9120
Furthermore, Commissioner Peck states during the deliberations that:
 The case [Mr. Fiero] presents in my opinion, is not strong enough to justify the Town of East Lyme allowing further expansion of strip zoning along Chesterfield Road. Yes, a change of zone would certainly satisfy one property owner but I don't think it's in the best interest of the town to do this.
"The conclusions of the zoning commission must stand if even one of the stated reasons is reasonably supported by the record." R.B. Kent Sons, Inc. v. Planning Commission, 21 Conn. App. 370,373 (1990). In the present case each of the commission's stated reasons are supported by the record.
All procedural requirements were met and careful discussion and consideration were given to the evidence presented. The decision of the Commission is exactly the type of decision by a local zoning authority which "lives close to the circumstances and conditions which create the problem and shape the solution" (Cameo Park Homes, Inc. v. Planning and Zoning Commission,150 Conn. 162, 177 (1963).
The Commission acted properly, legally and within its powers and discretion in denying the plaintiffs request for a zone change of plaintiffs' property.
The plaintiffs' appeal is dismissed.
AUSTIN, JUDGE