[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this administrative appeal, the plaintiff, the Savings Bank of Rockville, challenges the adoption by the defendant Planning and Zoning Commission of the town of Tolland, of various CT Page 10059 zoning regulations. The newly adopted zoning regulations amended the existing zoning regulation by limiting the maximum floor area per store to 52,000 square feet. The plaintiff owns a fifty acre parcel in the Planned Business and development Zone which is affected by the Floor Area Provision.
PROCEDURAL/FACTUAL HISTORY
By amended complaint dated January 29, 1996, the plaintiff alleges the following facts. The defendant advertised that a public hearing would be held on November 27, 1995 to consider revisions to the Zoning Regulations of the Town of Tolland. The revisions encompassed a proposed maximum floor area limit on a single store of 40,000 square feet. At the hearing, the plaintiff appeared and opposed the adoption of the regulations.
On December 11, 1995, the defendant adopted revisions to the zoning regulations, including limiting the single store floor area to 52,000 square feet. On December 18, 1995, the defendant gave notice of its decision by publication in the Journal Inquirer. The plaintiff challenges the defendant's action by arguing that the commission acted illegally, arbitrarily and abused the discretion vested in it by: (1) a member of the commission had predetermined to vote in favor of the floor area provision regardless of the evidence presented at the hearing; (2) a member of the commission was personally opposed to and biased against the plaintiff; (3) the defendant's decision was contrary to the General Statutes; (4) the defendant adopted the floor area provision without any evidence to show that such provision is rationally related to any legitimate objective of zoning; (5) the defendant adopted the provision without any evidence to justify the specific area limits of the floor area provision; (6) the defendant failed to follow the Town Plan of Development in adopting the provision and failed to state on the record its finding on consistency of the proposed zoning regulation with the Town Plan of Development, and (7) the defendant's decision to adopt the floor area provision was beyond the powers conferred upon it by law and was ultravires.
The defendant filed a return of record on February 26, 1996. The defendant filed its answer on March 22, 1996. The parties appeared before the court on October 11, 1996 and argued the merits of this appeal. CT Page 10060
JURISDICTION
Appeals to courts from administrative agencies exist only under statutory authority. Killingly v. Connecticut SitingCouncil, 220 Conn. 516, 521, 600 A.2d 752 (1991). A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions which create it.Citizens Against Pollution Northwest Inc. v. ConnecticutSiting Council, 217 Conn. 143, 152, 584 A.2d 1183 (1991). Failure to comply strictly with the statutory provisions by which a statutory right to appeal is created will subject an appeal to dismissal. Killingly v. Connecticut Siting Council, supra, 220 Conn. 522.
A. Aggrievement
Aggrievement is a jurisdictional matter and a prerequisite for maintaining an appeal. Winchester Woods Associates v.Planning Zoning Commission, 219 Conn. 303, 307,592 A.2d 953 (1991). The question of aggrievement is essentially one of standing. DiBonaventura v. Zoning Board of Appeals,24 Conn. App. 369, 373, 573 A.2d 1222 (1991). Unless the plaintiff alleges and proves aggrievement, the court must dismiss the appeal. Id. "To be an aggrieved person, one must be affected directly or in relation to a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of all members of the community, and the appellant must be specifically and injuriously affected as to property or other legal rights."Smith v. Planning and Zoning Board, 203 Conn. 317, 321,524 A.2d 1128 (1987).
The plaintiff is the owner of record of a fifty acre parcel of land located in the Planned Business and Development Zone in the Town of Tolland. (Plaintiff's Exhibit A), (Return of Record # 2). It is undisputed that the Planned Business and Development Zone is controlled by the regulations adopted by the defendant At the hearing the plaintiff proffered evidence that the uses of the, property will be severely limited by the defendant's floor area regulations. The plaintiff offered evidence that the value of its property has suffered diminution of at least twenty-five per-cent. While the defendant showed that there are alternative uses for the property, the plaintiff has sustained the burden of showing that the defendant's actions have injured the plaintiff's property. CT Page 10061
The defendant argues that pursuant to the recent decision inBombero v. Planning Zoning Commission, 40 Conn. App. 75,669 A.2d 598 (1996), the plaintiff does not have standing to raise this claim in an appeal. The defendant asserts that because the plaintiff's attack on the regulation is general in nature in that it is an amendment affecting all properties, not just a specific parcel, the plaintiff must raise its present claim in an action for declaratory judgment. However, in Bombero
the only evidence of aggrievement presented at the hearing was that the plaintiff's property fell into the category of affected parcels. Bombero v. Planning Zoning Commission,218 Conn. 737, 740. Therefore, the plaintiff's argument was that he may possibly be affected by the regulation. Id., 740-41. In the present case, the plaintiff has proffered evidence that there has been a diminution of the land's value because potential purchasers have been eliminated as legitimate possibilities given the retail floor area limitation.
Therefore, the plaintiff is aggrieved.
B. Timeliness
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which the created the right. Simko v. Zoning Board of Appeals, 206 Conn. 374,377, 538 A.2d 202 (1988). These provisions are mandatory and jurisdictional; failure to comply subjects the appeal to dismissal. Capalbo v. Planning Zoning Board ofAppeals, 208 Conn. 480, 485, 547 A.2d 528 (1988). Thus, where an appeal is filed after the statutory appeal period has expired, the trial court lacks subject matter jurisdiction over the appeal. Upjohn Co. v. Zoning Board of Appeals,224 Conn. 96, 102, 616 A.2d 793 (1992).
General Statutes § 8-8 (b) provides that "any person aggrieved by any decision of a board may take an appeal . . . within fifteen days from the date that notice of the decision was published. . . ." Such appeal "shall be commenced by service of process in; accordance with [section 8-8]." General Statutes § 8-8 (b).
The record and file indicates that legal notice of the defendant's decision was made on December 18, 1995. (ROR # 20). CT Page 10062 The plaintiff's appeal was filed with the clerk of the court on January 4, 1996. Service of process in accordance with General Statutes § 8-8 (b) and subsections (e) and (f) occurred on December 29, 1995. Service of process was therefore timely.
DECISION
At oral argument, the plaintiff stated it would not pursue the allegations of bias concerning a member of the defendant commission. The plaintiff argues that the defendant commission had no authority to enact a regulation limiting store floor area pursuant to General Statutes § 8-2, that the defendant commission did not articulate its rationale for enacting the floor area limitation, and that the floor area provision is not rationally related to a legitimate end. The defendant argues that the regulation at issue is within the powers conferred upon planning and zoning commissions, sufficiently articulated its rationale for adopting the regulation and the regulation is rationally related to the legitimate town end of preventing traffic congestion.
 I
The plaintiff asserts in its first argument, that the defendant commission acted outside General Statutes § 8-2, the enabling act, and therefore acted ultra vires in enacting the floor area limitation. In pertinent part, General Statutes §8-2 states: "The zoning commission of each city . . . is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes, . . . and the height, size and location of advertising signs and billboards. . . . Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings of structures and the use of land. . . . Such regulations shall be made in accordance with a comprehensive plan in adopting such regulations the commission shall consider the plan of development prepared under section 8-23. Such regulations shall be designed to lesson congestion in the streets, to secure safety from fire, CT Page 10063 panic, flood and other dangers; to promote health and the general welfare; . . . to prevent the overcrowding of land . . . . Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality." General Statutes § 8-2 (a).
The enabling act encompasses, through reference § 8-23, which states: "The commission shall prepare, adopt and amend a plan of development for the municipality. Such plan shall show the commission's recommendation for the most desirable use of land within the municipality for residential, commercial, industrial and other purposes and for the most desirable density of population in the several parts of the municipality. . . . Such other recommendations may be made by the commission and included in the plan as will, in its judgment, be beneficial to the municipality. The plan of development shall be a statement of policies, goals and standards for the physical and economic development of the municipality, and may include all necessary and related maps, explanatory material, photographs, charts or other pertinent data and information relative to the past, present and future trends of the municipality, and may include recommended programs for the implementation of the plan, including . . . a program for enactment and enforcement of zoning and subdivision controls . . . . The plan shall be designed to promote with the greatest efficiency and economy the coordinated development of the municipality and the general welfare and prosperity of its people." General Statutes § 8-23 (a).
A commission acts in a legislative capacity when it enacts a change of zone. Primerica v. Planning ZoningCommission, 211 Conn. 85, 96, 558 A.2d 646 (1989). Furthermore, the commission acts in a legislative capacity when it amends its regulations as well. Pierrepont v. ZoningCommission, 154 Conn. 463, 468, 226 A.2d 659 (1967). However, a municipality has no inherent powers. Therefore, there must be statutory authority to support zoning ordinances and regulations, and the regulations must be enacted pursuant to the enabling statute. Capalbo v. Planning Zoning Board ofAppeals, 208 Conn. 480, 490, 547 A.2d 528 (1988).
The proposed regulation revisions are as follows. Section 170-1 of the Tolland Planning and Zoning Regulations would be amended to read "[t]he purpose and intent of the following CT Page 10064 regulations are to promote the coordinated development ofthe town for the public health, safety and welfare of the community. The ultimate objectives of the Zoning Regulation are to confine certain classes of buildings and uses to designated localities or zones; to regulate and restrict the use of land and the use, location, height, scale and bulk of buildings and structures . . . ." (Emphasis in original). (Return of Record #27). Section 170-72 was proposed reading "No individualstore may exceed 40,000 square feet." (ROR #27). Section 170-72 was actually approved limiting the area to 52, 000 square feet. (ROR #20). The threshold issue to I the plaintiff's claim against the commission is, therefore, whether General Statutes § 8-2 authorizes a zoning commission to regulate the floor area of a store.
A commission has broad discretion as long as it acts "in harmony with and in conformity to a comprehensive plan as mandated by General Statutes § 8-2." Parks v. Planning Zoning Commission, 178 Conn. 657, 660-61, 425 A.2d 100
(1979). A trial court is not at liberty to substitute its judgment for that of a local authority which is acting within its legislative powers. Frito-Lay, Inc. v. Planning ZoningCommission, 206 Conn. 554, 572-73, 538 A.2d 1039 (1988). The court may only grant relief on appeal where the local authority has acted illegally, arbitrarily or in abuse of its discretion.Smith v. Zoning Board of Appeals, 227 Conn. 71, 80,629 A.2d 1089 (1993).
A zoning regulation is a local legislative enactment, and in its interpretation the court is to discern the intent of the legislative body as manifested in the words of the regulation.Spero v. Zoning Board of Appeals, 217 Conn. 435, 441,586 A.2d 590 (1991). Since zoning regulations are in derogation of the common law property rights, the regulations cannot be construed beyond the fair import of their language to include or exclude by implication that which is not clearly within its express terms. Id. The words used are to be interpreted in accordance with their natural and ordinary meaning; common sense must be used in construing the regulation, and the court assumes that a rational and reasonable result was intended by the local legislative body. Id. Where a zoning commission has acted with the intention of promoting the best interests of the community and its actions are in harmony with its regulations and the comprehensive plans, its actions cannot be deemed to be arbitrary or illegal. Fenn v. Planning Zoning
CT Page 10065Commission, 24 Conn. App. 430, 436, 589 A.2d 3 (1991).
The plaintiff relies on the case of Capalbo v. Planning Zoning Board of Appeals, 208 Conn. 480, 547 A.2d 528
(1988), to support its argument that Tolland cannot regulate the floor area of a store. Calapbo, through analogy, however, is unpersuasive. Calapbo v. Planning Zoning Board of Appeals, supra focused on a town's regulation of the color of signs within the municipality The court stated that in reviewing a regulation; "we do not search for a statutory prohibition against such an enactment; rather, we must search for statutoryauthority for the enactment." (Emphasis added; internal quotation marks omitted.) Id., 490. The court found "none, and paying heed to the maxim that zoning regulations, being in derogation of common-law property rights, should not be extended by construction beyond the fair import of their language and cannot be construed to include by implication that which is not clearly within their express terms . . . the town had no authority to regulate the colors in a sign." Id., 490-91.
In Capalbo, the court faced a regulation that was without question, not textually included within General Statutes § 8-2. However, in the present case, a more in-depth interpretation of section 8-2 is necessary. The plaintiff argues that General Statutes § 8-2 does not authorize the regulation of stores because to regulate stores, and not buildings, with maximum floor area limitations, the town of Tolland is regulating ownership. The defendant posits two arguments. First, the defendant asserts that a store is a structure and authorized under section 8-2. The defendant also argues that the town's regulation was enacted to regulate the use of land within the municipality.
To determine if General Statutes § 8-2 authorizes the town's regulation, the inquiry must begin with the regulation itself. There is no disagreement between the parties that section 8-2 authorizes a zoning commission to regulate the size of buildings and structures. The defendant argues that a store must be a structure.
A store is defined as "[any] place where goods are deposited and sold by one engaged in buying and selling them," Black'sLaw Dictionary, Fifth Ed., p. 1273, or "a business establishment where usually diversified goods are kept for retail CT Page 10066 sale." Merriam Websters Collegiate Dictionary, Tenth Ed., p. 1159. Whereas a structure is defined as "[a]ny construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner. . . . [or] a combination of materials to form a construction for occupancy, use or ornamentation whether installed on, above, or below the surface of a parcel of land."Black's Law Dictionary, Fifth Ed., p. 1276. A logical reading of the common usage or these words demonstrates that while a store can be a structure, it does not have to be, as in the case of a "flea market" or "roadside stands."
The defendant illustrates his argument with Bauer v.Waste Management of Connecticut, Inc. 234 Conn. 221, 235,662 A.2d 1179 (1995). In Bauer, the court found that a landfill could be regulated as a structure and therefore, the defendant asserts if a landfill is a structure, a store could be as well. However, a landfill can fall into the definition of a structure because it is an artificial combination of materials built upon or below a parcel of land. One cannot have a landfill without combining materials on land, but a store does not need a building.
The defendant's second argument is more availing. General statutes § 8-2 authorizes a town to enact regulations controlling the use of land, especially that land used for trade. The defendant cites Builders Service Corporation v. Planning Zoning Commission, 208 Conn. 267, 545 A.2d 530 (1988), arguing that General Statutes § 8-23 authorizes a zoning commission to regulate floor space. The court held inBuilder Services, that "because § 8-2 authorizes zoning commissions to regulate the size of buildings it authorizes them to regulate the size of the floor areas of such buildings by enacting regulations prescribing minimum floor area requirements. Such interpretation does not require inserting a word that the legislature did not include but rather advancing the legislative intent by interpreting the meaning of what it did say. . . . [Section] 8-2 authorizes the enactment of minimum floor regulations not only from the size of buildings' language but also because this conclusion is reasonable in the light of the entire statutory purpose of § 8-2 in the statutory zoning scheme. Therefore, the commission's authority to enact a regulation prescribing minimum floor areas requirements . . . is not `ultra vires,' i.e., beyond its power under the zoning enabling act in General Statutes § 8-2." (Citations omitted; CT Page 10067 internal quotation marks omitted; emphasis omitted.)Id., 277-78.
In a sister jurisdiction, a New York court entertained a declaratory judgment action challenging the constitutionality of a local zoning ordinance reducing the floor-area ratio within the municipality. Esselte Pendaflex Corp. v. IncorporatedVillage of Garden City, 629 N.Y.S.2d 59, 216 App.Div. 519
(N.Y.A.D. 2 Dept. 1995). The court upheld the regulation and found that such a regulation "has at least the required minimal relationship to a legitimate governmental objective . . . . Moreover, . . . the defendant's goal of controlling future development is a legitimate governmental objective." (Citations omitted.) 629 N.Y.S.2d 59, 60.
Regulating maximum floor space is an issue of first impression in Connecticut. It is logical, under the reasoning inBuilder Services, supra, that if a commission can regulate the minimum floor area, a commission can limit the maximum floor area of the use of a parcel. Other jurisdictions have followed this line of reasoning as well. Therefore, it is within the statutory grant of powers for a commission to set the maximum floor area of a retail store.
 II
The plaintiff additionally attacks the defendant commission's enactment on the grounds that the floor area limitation is not rationally related to any legitimate municipal end. The defendant asserts that in approving the proposed regulation, the commission based its decision on evidence at the hearing that stores that came into the town looking for large floor area would increase traffic congestion in the town. Enacting the limitation, the defendant asserts, would reduce the risk of traffic congestion. The defendant argues that the concept of reducing traffic is a legitimate end for the municipality to focus on and that the record contains substantial evidence demonstrating that it was the traffic concerns that convinced the commission to approve the regulation. On the contrary, the plaintiff argues that to restrict the floor limitation of stores within a single structure is not rational to alleviate traffic congestion.
There is no contest that a purpose of the regulations can focus on traffic congestion. Section 8-2 clearly states that the regulation shall be "designed to lesson congestion in the CT Page 10068 streets . . . ." General Statutes § 8-2. "An important purpose of zoning is to alleviate traffic congestion." Jarvis Acres,Inc. v. Zoning Commission, 163 Conn. 41, 49, 301 A.2d 244
(1972), citing General Statutes § 8-2. "It is not the over-all volume of daily traffic, but congestion in the streets, that is, density of traffic, which is referred to in the statute." (Internal quotation marks omitted.) Id.
In Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, 220 Conn. 527,600 A.2d 757 (1991), the court found that goal to reduce the risk of traffic congestion was a legitimate reason for the planning and zoning commission to enact particular regulations. The court held that the record "adequately establishe[d] that the action of the commission was in accordance with the . . . comprehensive plan and was reasonably related to the police powers enumerated in § 8-2. One of those powers is that regulations be `designed to lessen congestion in the streets.' In reaching its decision, the commission was entitled to compare the potential traffic to be generated by development permissible under the previous zoning regulations with the traffic to be generated by development permissible under the proposed amendments . . . ." Id., 549.
The court additionally found that the amendments conformed to the town's comprehensive plan referred to in § 8-2. The court found that "[i]n absence of a formally adopted comprehensive plan, a town's comprehensive plan is to be found in the scheme of the zoning regulations themselves. . . . A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of its properties. . . . The requirement of a comprehensive plan is generally satisfied when the zoning authority acts with the intention of promoting the best interests of the entire community." (Citations omitted; internal quotation marks omitted.) Id., 550-51.
In the present case, there is substantial evidence to support that the commission's adoption of the regulations was on the ground of reducing the risk of traffic congestion. The commission held a public hearing to discuss the proposed amendments to the regulations on November 27, 1995. (ROR # 1, p. 1). The commission entertained comments from Erling Murtha-Smith, who stated: "if you subdivide a big store, you might reduce the amount of traffic CT Page 10069 that it generates. . . ." (ROR # 1, p. 15).
Murtha-Smith continued with an example: "This is taken from the Highway Capacity Manual, uh, and also from data, recent traffic studies through the Green as I said way back in the other public hearings, there is about 9,000 vehicles per weekday coming through the Green. . . . A 100,0000 square foot store will generate about 9,000 vehicles per day. So as I said back in, in our public hearings, that's a lot of traffic compound with the existing traffic that runs right now. If you put in a 10,000, a 100,000 foot shopping center, in other words a bunch of 40,000's until you've reached that limit, you generate 7,000 vehicles per day. So basically, you've saved about 2,000 vehicles by changing it from being one big store to having it be 40,000 plus 40,000 plus, I guess, 20,000." (ROR # 1, p. 15).
Murtha-Smith concluded his testimony by stating the opinion that as the regulation was proposed, at a maximum limit of 40,000 square feet per store, saving traffic from 2,000 cars was not substantial enough and the commission should look at ways of decreasing the traffic even more. (ROR # 1, p. 15). The plaintiff was also represented at the hearing and stated that the 40,000 maximum square footage was too restrictive and unjustified. (ROR #1, 24). The plaintiff proposed a number of around 70 or 80,000 which would accommodate many different retail stores, including a "super-store" and in the plaintiff's opinion, more consistent with the plan of development. (ROR # 1, p. 26). During the public hearing on December 11, 1995, the defendant commission set the limit within the proposed regulation to 52,000 square feet per retail store by unanimous vote. (ROR # 3).
In the Tolland Plan of Development, (ROR # 29), it is clear that a limitation on the size of stores is within the purview of the plan. The plan states that: "At the heart of the Plan of Development are its goals and policies concerning the focus and direction of future growth and development in Tolland." (ROR # 29, p. 3). The plan also supposes to "[s]trive to maintain and improve the economic base of the Town to continue it as a good place to live, work and raise a family." (ROR # 29, p. 4). The policies of the plan include providing "for retail business development to the extent justified primarily for service to residents." (ROR # 29, p. 4). The plan takes into account that "Tolland's future growth . . . should be geared to . . . the Town's infrastructure capacity (roads . . . etc.)." (ROR # 29, p. 4). CT Page 10070
The defendant commission relied on its concern for traffic congestion when deciding to enact the proposed amendments to the regulations. There is substantial evidence within the record that demonstrated that traffic concerns were brought to the attention of the commission. Traffic congestion may not have been the only concern of the commission but the record indicates that it was an entertained concern.
Additionally, the limitation on retail floor area is within the Town of Tolland's Plan of Development's parameters. By limiting the floor area, the town has indirectly reduced traffic congestion. This concern alone is within the plan of development where the plan directs that the town's growth should take into account the town's existing infrastructure, ie. the town's roads. Furthermore, by limiting floor area, the town has assured itself that a "super-store" cannot be built within the town and therefore, the plan of development's concern regarding providing retail shopping primarily to residents is satisfied. Therefore, the defendant's maximum floor area limit is within the town's plan of development.
Because the defendant commission relied on traffic congestion to enact it's regulations, and since the regulation is within the town's plan of development, the town's regulation is rationally related to a legitimate municipal end. It is legitimate for the town to concern itself with the traffic capacity of its roads and limit its economic development to service its own residents. There was testimony at the hearings that demonstrated that a floor area limit would reduce traffic patronizing the stores. Additionally, by eliminating the possibility that a "super-store" would be built in Tolland, the town insured that it would only be providing retain services primarily to its residents. Therefore, enacting a floor area limitation for retail stores is rationally related to the legitimate municipal end of controlling traffic and providing retail services primarily to town residents.
 III
The plaintiff's final argument asserts that the defendant failed to state on record the reason why it adopted the store size regulation. Additionally, the plaintiff argues the defendant failed to make a finding of consistency with the plan of development. The plaintiff asserts these claims are a violation of General Statutes. The defendant commission argues that the CT Page 10071 adoption of the amendments was made in a manner consistent with statutes.
Section 8-3 (c) in pertinent part states: "Whenever such commission makes any change in a regulation or boundary it shall state upon the records the reason why such change is made." General Statutes § 8-3 (c). Section 8-3a states: "[i]n any municipality which has a combined planning and zoning commission operating under the general statutes or any special act, the commission shall state on the record its findings on consistency of proposed zoning regulation or boundaries or changes thereof with the plan of development of the municipality." General Statutes § 8-3a(a).
The commission has broad discretion when it acts within its prescribed powers. First Hartford Realty Corporation v.Planning Zoning Commission, 165 Conn. 533, 540,338 A.2d 490 (1973). The question on appeal is not whether the court would have reached the same conclusions that the commission did, but whether the commission's conclusions are supported by the record.Burnham v. Planning Zoning Commission, 189 Conn. 261,265, 455 A.2d 339 (1983). The failure to comply with section 8-3
is directory only, so that failure to give reasons does not render the commission's action void. Morningside Associationv. Planning Zoning Commission, 162 Conn. 154, 156,292 A.2d 893 (1972). The plaintiff still has the burden of proving that the commission acted illegally, arbitrarily or unreasonably.Chucta v. Planning Zoning Commission, 154 Conn. 393,396, 225 A.2d 822 (1967). Additionally, the plan of development is merely advisory to and does not bind the commission. SeeHall v. Planning Zoning Board of Appeals, 153 Conn. 574,576, 219 A.2d 445 (1966); Andrew C. Petersen, Inc. v.Town Plan and Zoning Commission 154 Conn. 638, 641,228 A.2d 126 (1967).
To resolve the plaintiff's substantive claim against the defendant commission it was necessary to review the record to determine if the record contained substantial evidence to support the defendant's conclusion. As described above, the record indicates substantial evidence exists to support the commission's adoption of the amended regulations. Therefore, since the failure to state the commission's grounds for its actions is not fatal to the commission's actions, and the record contains substantial evidence supporting the defendant's actions, the plaintiff's claim is without merit. CT Page 10072
The plaintiff's appeal is dismissed.
Klaczak, J.