FRANK M. CAPALBO ET AL. *v.* PLANNING AND ZONING
BOARD OF APPEALS OF THE TOWN OF GREENWICH

FRANK M. CAPALBO ET AL. *v.* JERRY LANDSFELD
(13353)

PETERS, C. J., HEALEY, SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued June 3—decision released August 2, 1988

*John H. Reilly,* assistant town attorney, for the appellants (defendant in each case).

*Stewart I. Edelstein,* with whom, on the brief, was *Jeremiah R. Dineen,* for the appellees (plaintiffs).

PETERS, C. J. The principal issue in this case is whether General Statutes § 8-2[1] authorizes a municipality to enact a zoning regulation limiting the number of colors that may be contained in an outdoor advertising sign. The plaintiffs, Frank M. and Caroline Capalbo, appealed to the Superior Court from a decision of the named defendant, the planning and zoning board of appeals of the town of Greenwich (board), denying the plaintiffs a permit to erect their sign. The trial court consolidated this administrative appeal with

---

[1] "[General Statutes] Sec. 8-2. REGULATIONS. The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes, and the height, size and location of advertising signs and billboards. Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transpor-

the plaintiffs' separate action against the defendant Jerry Landsfeld, the Greenwich zoning enforcement officer, for a temporary order of mandamus compelling issuance of the sign permit. After a hearing, the trial court ruled in the plaintiffs' favor. The Appellate Court granted the defendants' petition for certification and, thereafter, this court transferred the appeal to itself pursuant to Practice Book § 4023. We find no error.

The relevant facts are undisputed. On March 20, 1986, the plaintiffs applied to the Greenwich zoning enforcement officer, the defendant Landsfeld, for a permit to erect a freestanding sign on their premises. The proposed sign consisted of a white background with three bands of different colors (red, orange and pur-

tation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality. Such regulations shall also encourage the development of housing opportunities for all citizens of the municipality consistent with soil types, terrain and infrastructure capacity. Zoning regulations may be made with reasonable consideration for the protection of historic factors and shall be made with reasonable consideration for the protection of existing and potential public surface and ground drinking water supplies. On and after July 1, 1985, the regulations shall provide that proper provision be made for soil erosion and sediment control pursuant to section 22a-329. Such regulations may also encourage energy efficient-patterns of development, the use of solar and other renewable forms of energy, and energy conservation. The regulations may also provide for incentives for developers who use passive solar energy techniques, as defined in subsection (b) of section 8-25, in planning a residential subdivision development. The incentives may include, but not be limited to, cluster development, higher density development and performance standards for roads, sidewalks and underground facilities in the subdivision. Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. Any city, town or borough which adopts the provisions of this chapter may, by vote of its legislative body, exempt municipal property from the regulations prescribed by the zoning commission of such city, town or borough; but unless it is so voted municipal property shall be subject to such regulations."

ple) surrounding a center portion containing black lines representing latitude and longitude. Below, in black, capital, roman letters, were the words "Realty World." By letter dated the same day, the zoning enforcement officer denied the application, stating as the sole reason that the sign contained more than three colors, in violation of § 6-169 of the building zone regulations of the town of Greenwich.[2]

The plaintiffs appealed the decision of the zoning enforcement officer to the defendant board. The sole issue they raised before the board was whether § 6-169 of the building zone regulations, limiting the number of colors contained on a sign to three, including black and white, restricted the plaintiffs' use of their federally registered service mark in violation of the Lanham Act, 15 U.S.C. § 1121a. The board denied the appeal, ruling that § 6-169 did not conflict with the Lanham Act.

The plaintiffs then appealed to the Superior Court, claiming that § 6-169 impermissibly restricted the use of their federally registered service mark, violated various state and federal constitutional provisions and fell outside the scope of General Statutes § 8-2, which delegates specific zoning powers to municipalities. The trial court, ruling in the plaintiffs' favor, held that

---

[2] Section 6-169 of the Greenwich building zone regulations provides: "Sec. 6-169. DESIGN AND LETTERING.

"Signs shall be designed in harmony with the building and established development, in accordance with recommendations of the Architectural Review Committee. Three dimensional signs shall not exceed three (3) feet in any dimension. All store units in the same building or in separate buildings in an integrated shopping center shall have a uniform design and placement of signs. No more than three (3) different colors, including black and white shall be used in a sign and no more than two (2) different colors shall be used in any lettering. Lettering shall be no larger than eighteen (18) inches in height. Lettering of permanent window and door signs shall be no larger than nine (9) inches in height except as allowed pursuant to Sec. 6-164 (a) (1) (c). (1/1/87) (Bldg. Zone Regs., § 21.2C (5).)"

although § 6-169 did not conflict with the Lanham Act, it exceeded the power delegated to the municipality by General Statutes § 8-2, which empowers municipalities to regulate only the "height, size and location" of signs, but does not mention colors. The defendants' appeals contest the validity of this ruling.

## I

Initially, we must decide if these appeals are properly before us. The appeal of the trial court's reversal of the board's decision is our first opportunity to consider the effect of the legislature's validating statute, Public Acts 1988, No. 88-79,[3] enacted in response to our recent decisions in *Simko* v. *Zoning Board of Appeals,* 205 Conn. 413, 533 A.2d 879 (1987) (*Simko I*), and *Simko* v. *Zoning Board of Appeals,* 206 Conn. 374, 538 A.2d 202 (1988) (*Simko II*).[4]

In *Simko I* and *Simko II,* this court held that the chairman or clerk of the zoning board or commission, *and* the clerk of the municipality are necessary parties

---

[3] Public Acts 1988, No. 88-79, enacted April 20, 1988, supplemented General Statutes § 8-8 by adding, inter alia: "Sec. 3. (a) Any appeal of a decision of a zoning commission, planning commission, planning and zoning commission or zoning board of appeals taken on or after October 1, 1985 and prior to December 1, 1987 in which a final judgment has not been entered prior to the effective date of this act, otherwise valid except that the party taking such appeal failed to name the clerk of the municipality as a party to the appeal in the appeal citation, is validated."

[4] There is no doubt that the mandamus action against defendant Landsfeld, now on appeal, is properly before us. First, the mandamus action was not an appeal to the Superior Court, but a direct action, and therefore poses no problem with regard to General Statutes § 8-8 or our recent decisions in *Simko* v. *Zoning Board of Appeals,* 205 Conn. 413, 533 A.2d 879 (1987), and *Simko* v. *Zoning Board of Appeals,* 206 Conn. 374, 538 A.2d 202 (1988). Second, we have in the past "held that the pendency of a zoning appeal . . . [does] not preclude resort to the more expeditious and effective remedy of mandamus in order to 'vindicate the plaintiffs' right to the immediate issuance of a . . . permit.' " *Merlo* v. *Planning & Zoning Commission,* 196 Conn. 676, 681, 495 A.2d 268 (1985), quoting *Vartuli* v. *Sotire,* 192 Conn. 353, 366, 472 A.2d 336 (1984).

to the initiation of a zoning appeal to the Superior Court and that General Statutes § 8-8 (b), as amended by Public Acts 1985, No. 85-284, requires the appellant to cite and serve both. *Simko I,* supra, 418–19; *Simko II,* supra, 377, 382; see also *Andrew Ansaldi Co.* v. *Planning & Zoning Commission,* 207 Conn. 67, 69–70, 540 A.2d 59 (1988). Failure to comply strictly with the provisions of § 8-8 (b) renders the appeal subject to dismissal. *Simko I,* supra, 421; *Simko II,* supra, 383.

In this case the plaintiffs served the Greenwich town clerk with a copy of their appeal to the Superior Court, but did not cite the clerk as a party to the appeal. Thus, the *Simko* decisions would appear to subject their appeal to dismissal.

The legislature's recent supplement to § 8-8, however, seeks to save the many appeals invalidated by *Simko I* and *Simko II.* Public Acts 1988, No. 88-79. Pursuant to (3) (a) of the validating act, four conditions must exist for a zoning appeal to be validated: (1) it must have been taken on or after October 1, 1985; (2) it must have been taken prior to December 1, 1987; (3) a "final judgment" must not have been rendered prior to the effective date of the act (April 20, 1988); and (4) the appeal must be otherwise valid except that the appellant failed to name the clerk of the municipality as a party to the appeal. Although the plaintiffs' appeal to the Superior Court on June 9, 1986, readily meets the first and second conditions, it raises questions with regard to the third and fourth conditions.

The question concerning the third condition is whether the plaintiffs' appeal can meet its requirement that a "final judgment" must not have been rendered prior to the effective date of the act (April 20, 1988). Before that date, the trial court had rendered its judgment, certification of the defendants' appeal had been granted, and the case had been transferred to this court

for final disposition. The defendants contend that the trial court's decision was a "final judgment" and that the act therefore does not validate this appeal. The plaintiffs, on the other hand, argue that a judgment appealed to this court is not "final" until this court rules on it.

"In our construction of the applicable statutory language, our goal is to 'ascertain and give effect to the apparent intent of the legislature.' *State* v. *Blasko,* 202 Conn. 541, 553, 522 A.2d 753 (1987). In reaching this goal, we consider first whether the language of the statute yields a plain and unambiguous resolution. *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986). Any latent ambiguity in the statutory language itself is normally resolved by turning for guidance to the legislative history and the purpose the statute is to serve. *State* v. *Kozlowski,* 199 Conn. 667, 673, 509 A.2d 20 (1986)." *State* v. *Champagne,* 206 Conn. 421, 428, 538 A.2d 193 (1988).

The term "final judgment" is not "plain and unambiguous." Indeed, as we have noted in the past, the effect of a pending appeal upon an otherwise final judgment is " '[o]ne of the most troublesome problems in applying the rule of finality . . .' because in this area . . . '[t]here are no technically precise and universally recognized rules . . . .' " *Preisner* v. *Aetna Casualty & Surety Co.,* 203 Conn. 407, 413–14, 525 A.2d 83 (1987), quoting F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.4, p. 592; see also *Enfield Federal Savings & Loan Assn.* v. *Bissell,* 184 Conn. 569, 573, 440 A.2d 220 (1981). We therefore turn to the act's legislative history to discern the intended meaning of "final judgment."

The legislative history of the validating act reflects its overarching purpose of ensuring a hearing and decision on the merits for zoning appeals otherwise sub-

ject to dismissal on *Simko* grounds. The principal proponents of the act, in both houses of the General Assembly, clearly articulated this purpose. In the House of Representatives, Representative Richard D. Tulisano explained that "the bill would have the effect of allowing them [the appellants] to have their cases tried on the merits or heard on the merits." 31 H. R. Proc., Pt. 4, 1988 Sess., p. 1357. In the Senate, Senator Anthony V. Avallone stated: "I believe it is . . . appropriate in our system of jurisprudence for the parties to have, wherever appropriate, a hearing on the merits and to have their decisions or their rights effected by a hearing only after it has been heard on the merits, and this bill would effectively do that." 31 S. Proc., Pt. 4, 1988 Sess., p. 1120. Consistently, Senator Avallone noted that the act would not permit the reopening of cases where there had been a final hearing and judgment on the merits. Id., p. 1132–33.[5]

In light of this legislative history, and the legislature's undoubted intent to validate zoning appeals that had run into *Simko* difficulties, we reject the defendants' argument that the legislature meant to exclude cases on timely appeal from the ambit of Public Acts 1988, No. 88-79.[6] A functional construction of the term "final judgment" is consistent with usage that we have found appropriate in other cases. "In the absence of universally applicable rules, we have recognized that the relationship between a pending appeal and a judgment

---

[5] The legislative history also indicates that the legislature did not intend to reopen the *Simko* case itself. As Representative Richard D. Tulisano indicated "this amendment is in addition to the file copy dealing with the *Simko* decision, which makes it clear that our validating of the pending appeals would not apply to any case in which a substantial infringement of property rights may be affected *or a final judgment has been rendered such as Simko itself.*" 31 H.R. Proc., Pt. 4, 1988 Sess., p. 1346.

[6] The defendants' claim at oral argument to the contrary, we have regularly recognized the right of " 'the legislature retroactively to make legal and regular that which was previously illegal and irregular, provided that

depends upon the nature of the issue that is to be addressed. Accordingly, a trial court judgment has been held to be final, despite a pending appeal, insofar as the issue was the triggering of the statute of limitations; *Varley* v. *Varley,* 181 Conn. 58, 60–61, 434 A.2d 312 (1980); the continuing validity of interlocutory alimony orders; *Saunders* v. *Saunders,* 140 Conn. 140, 146, 98 A.2d 815 (1953); or the applicability of the rules of res judicata. *Salem Park, Inc.* v. *Salem,* 149 Conn. 141, 144, 176 A.2d 571 (1961). In [*Enfield Federal Savings & Loan Assn.* v. *Bissell,* supra, 573–74], we held that such a judgment was not final for the purpose of determining the law governing mortgage foreclosures when that law was amended during the pendency of an appeal." *Preisner* v. *Aetna Casualty & Surety Co.,* supra, 414. The teaching of these cases is that, in the present circumstances, as in those illustrated by *Enfield Federal Savings & Loan Assn.* v. *Bissell,* supra, there is no "final judgment" within the meaning of the validating act until the final resolution of a case on timely appeal to an appellate court.

The plaintiffs' appeal also raises a question about its compliance with the fourth condition stipulated by the saving act, Public Acts 1988, No. 88-79, § 3: was the plaintiffs' appeal "otherwise valid" except for failing to name the town clerk, when the town clerk was neither named nor served? The appeal citation in this case

---

vested rights are not unjustly abrogated.' " *State* v. *Blasko,* 202 Conn. 541, 554, 522 A.2d 753 (1987); *Enfield Federal Savings & Loan Assn.* v. *Bissell,* 184 Conn. 569, 572, 440 A.2d 220 (1981); see also *Hartford* v. *Freedom of Information Commission,* 201 Conn. 421, 426, 518 A.2d 49 (1986); *Andrulat* v. *Brook Hollow Associates,* 176 Conn. 409, 413, 407 A.2d 1017 (1979). Although there is a "general presumption that legislation is intended to operate prospectively"; *Harlow* v. *Planning & Zoning Commission,* 194 Conn. 187, 194, 479 A.2d 808 (1984); General Statutes § 55-3; "[t]he legislature clearly and unequivocally expressed its intent that [the act] be applied retroactively to appeals then pending. The object that the legislature intended to accomplish was to cure a procedural flaw in the statute . . . . " *Enfield Federal Savings & Loan Assn.* v. *Bissell,* supra.

failed to name the town clerk on its face. Even as amended by Public Acts 1988, No. 88-79, § 1, General Statutes § 8-8 (b) still requires the clerk of a municipality to be *served* with true and attested copies of the appeal. Actual delivery of a copy of the appeal by the sheriff to the town clerk, as occurred in this case, is of no legal effect if there is no direction in the citation to *serve* the clerk. *Simko I,* supra; *Village Creek Homeowners Assn.* v. *Public Utilities Commission,* 148 conn. 336, 339, 170 A.2d 732 (1961). Because the question is jurisdictional, we must resolve the validity of this citation under the saving act, even though the parties have not addressed it.

In our view, the same legislative history that persuades us to adopt a functional approach to the final judgment question also illuminates the proper construction of what constitutes an appeal that is "otherwise valid except that the appellant failed to name the clerk of the municipality as a party to the appeal." The legislature clearly articulated its intent, for a stipulated grace period, to validate pending zoning appeals that were discovered to have violated § 8-8 (b) after our decisions in *Simko I,* supra, and *Simko II,* supra. For the purpose of giving effect to this obvious legislative intent, we therefore construe § 3 (a) of Public Acts 1988, No. 88–79, to encompass not only the failure to name the town clerk as a party in the initial portion of the citation, but also the failure to name him or her for the purpose of directing proper service by the sheriff. So construed, the saving statute allows us to proceed to consider the merits of the present appeal.

II

We turn now to the question of whether Greenwich's enactment of § 6-169 of the building zone regulations exceeds the authority delegated to the town by Connecticut's zoning enabling act, General Statutes § 8-2, as

amended. Under our law, a municipality, as a creation of the state, has no inherent powers of its own. *Blue Sky Bar, Inc.* v. *Stratford,* 203 Conn. 14, 19, 523 A.2d 467 (1987); *Simons* v. *Canty,* 195 Conn. 524, 529, 488 A.2d 1267 (1985); *Buonocore* v. *Branford,* 192 Conn. 399, 401, 471 A.2d 961 (1984); *New Haven Commission on Equal Opportunities* v. *Yale University,* 183 Conn. 495, 499, 439 A.2d 404 (1981); *City Council* v. *Hall,* 180 Conn. 243, 248, 429 A.2d 481 (1980); *Pepin* v. *Danbury,* 171 Conn. 74, 83, 368 A.2d 88 (1976). Thus, while the state may have inherent power to regulate in the interest of public health, safety, morality and welfare; *State* v. *Darden,* 171 Conn. 677, 680, 372 A.2d 99 (1976); "[i]n connection with [municipal] zoning ordinances, it is a cardinal principle of construction that provisions and amendments must be enacted pursuant to the zoning enabling statute." *Langer* v. *Planning & Zoning Commission,* 163 Conn. 453, 457, 313 A.2d 44 (1972); see also *Eden* v. *Town Planning & Zoning Commission,* 139 Conn. 59, 63, 89 A.2d 746 (1952), quoting W. Maltbie, "The Legal Background of Zoning," 22 Conn. B.J. 2 (1948) ("zoning authorities can only exercise such power as has been validly conferred upon them by the General Assembly"); T. Tondro, Connecticut Land Use Regulation (1979) pp. 14–15.

One of the powers expressly conferred by § 8-2 on local zoning commissions is the authority to regulate " 'the height, size and location of advertising signs and billboards.' " That authority makes no mention whatsoever of colors. In determining whether Greenwich had the authority to adopt § 6-169, "we do not search for a statutory prohibition against such an enactment; rather, we must search for statutory authority for the enactment." *Buonocore* v. *Branford,* supra, 402. Finding none, and paying heed to the maxim that "[z]oning regulations, being in derogation of common-law property rights, should not be extended by construction

beyond the fair import of their language and cannot be construed to include by implication that which is not clearly within their express terms"; *J & M Realty Co.* v. *Board of Zoning Appeals,* 161 Conn. 229, 233, 286 A.2d 317 (1971); we conclude that the town had no authority to regulate the colors in a sign.

Despite the absence of any specific authority for its regulation, the defendants argue that such authority may be derived from the broad police powers that § 8-2 confers upon municipalities. The defendants rely on a municipality's authority "to promote health and general welfare" described earlier in § 8-2. This argument is unpersuasive for two reasons. First, it ignores the principle of statutory construction that " '[a]n enumeration of powers in a statute is uniformly held to forbid the things not enumerated.' " *Simons* v. *Canty,* supra, 530, quoting *State ex rel. Barlow* v. *Kaminsky,* 144 Conn. 612, 620, 136 A.2d 792 (1957). By expressly mentioning what municipalities *can* regulate with regard to signs, § 8-2 also implicitly states that municipalities *cannot* regulate signs in any other way.[7] Second, the argument overlooks the drafting history of § 8-2. The legislature amended the zoning enabling statute in 1931, six years after its initial passage, adding the power to regulate the "height, size and location of advertising signs and bill boards" to the list of delegated powers. See General Statutes (1930 Rev.) c. 29, § 423, as amended by Public Acts 1931, c. 192, § 42a. Assuming, as we must, "that the legislature did not intend to enact

---

[7] The defendants suggest, in their brief, that because "Connecticut courts have long recognized that the power to regulate signs encompasses the power to prohibit them entirely," the town's regulation of colors is a "prohibition" within its zoning power. For this proposition the defendants cite *Beckish* v. *Planning & Zoning Commission,* 162 Conn. 11, 15, 291 A.2d 208 (1971), which states: "A zoning ordinance may reasonably regulate or prohibit the use of advertising signs as an exercise of the police power . . . ." We disagree. Even if the town did have the power to prohibit signs, it did not do so here. Instead it sought to regulate the colors that a sign may contain.

superfluous legislation"; *State* v. *Ellis,* 197 Conn. 436, 472–73, 497 A.2d 974 (1985); we must conclude that the legislature believed that the general police power provisions contained in the statute before its amendment did not confer upon municipalities the power to regulate signs and billboards in any way.

To supplement its statutory argument, the defendants remind us that the United States Supreme Court has repeatedly held that states and municipalities may lawfully regulate sign colors in the interest of aesthetics. *Metromedia, Inc.* v. *San Diego,* 453 U.S. 490, 497–98, 101 S. Ct. 2882, 69 L. Ed. 2d 800 (1981); *Penn Central Transportation Co.* v. *New York City,* 438 U.S. 104, 129, 98 S. Ct. 2646, 57 L. Ed. 2d 631, reh. denied, 439 U.S. 883, 99 S. Ct. 226, 58 L. Ed. 2d 198 (1978); *Berman* v. *Parker,* 348 U.S. 26, 33, 75 S. Ct. 98, 99 L. Ed. 27 (1954). In none of these cases, however, was any question raised about a municipality's power to regulate signs absent an appropriate enabling statute. The issue before us is not the accommodation of aesthetic concerns within state and local police power but rather the division of regulatory authority under home rule as codified in General Statutes § 8-2. We conclude that this statute has not delegated to municipalitites the power to regulate colors in a sign.

There is no error.

In this opinion the other justices concurred.