[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULINGS RE MOTION TO DISMISS AND MOTION FOR JUDGMENT
The court addresses two related motions. The first is the plaintiff's June 21, 1996, motion for final judgment seeking the entry of judgment in its favor in accordance with AngelseaProductions, Inc. v. CHRO, 236 Conn. 681 (1996). The second CT Page 1673 motion is the defendant's July 8, 1996, motion to dismiss this action as moot in light of Public Act 96-241. The court heard argument on December 15, 1997. Because the determinative issues of each motion overlap, the court will discuss these motions simultaneously.
This action arose from a declaratory ruling of the CHRO which emanated from an August 11, 1991 complaint filed with the CHRO by Susan E. Hyde against the plaintiff Angelsea Productions, Inc. (Angelsea). On March 3, 1993, Angelsea moved to dismiss the complaint on the ground that the CHRO did not conduct an investigation within the nine month deadline set forth in General Statutes (Rev. to 1993) § 46a-83(b). On June 15, 1993 the CHRO issued a finding of reasonable cause, and denied Angelsea's motion to dismiss. On November 29, 1993, Angelsea filed another motion to dismiss for the CHRO's failure to hold a hearing within ninety days of its issuance of the reasonable cause finding in accordance with General Statutes (Rev. to 1993) § 46a-84 (b) and for its earlier failure to comply with General Statutes (Rev. to 1993) § 46b-83 (b). Angelsea also filed a petition for expedited declaratory ruling for the CHRO to declare the time limitations of § 46a-83 (b) and § 46a-84 (b) mandatory. On March 22, 1994, the CHRO denied the motion to dismiss and issued a declaratory ruling in which it concluded those time limitations were directions, not mandatory. Angelsea appealed the declaratory ruling to this court. Pursuant to General Statutes § 52-235, the court reserved four questions for consideration by the Appellate Court. The Supreme Court transferred the case to itself. The four questions were posed and answered by the Supreme Court as follows:
 (1) "Is the time limit for investigating a complaint set forth in [General Statutes (Rev. to 1993) § 46a-83 (b)] mandatory?" (2) "If the [commission] fails to make a reasonable cause determination within nine months from the date of filing a complaint, as set forth in [General Statutes (Rev. to 1993) § 46a-83 (b)], must the [commission] dismiss the complaint for lack of jurisdiction?" (3) "Is the time limit for holding a public hearing set forth in [General Statutes (Rev. to 1993) § 46a-84 (b)] mandatory?" and (4) "If the [commission] fails to hold a public hearing within [ninety] days after a finding of reasonable cause, as set forth in [General Statutes (Rev. to CT Page 1674 1993) § 46a-84 (b)], must the [commission] dismiss the complaint for lack of jurisdiction?"
. . .
"The answer to all four reserved questions is yes." Id.
685-86, 701. The decision was released on April 23, 1996.
On June 6, 1996, Public Act 96-241 became effective. That legislation provided in parts relevant to this case:
 Section. 1. (NEW) (a) Notwithstanding any provision of the general statutes to the contrary, the Commission on Human Rights and Opportunities shall have jurisdiction over any complaint filed pursuant to section 46a-82 of the general statutes on or before January 1, 1996, which has not been finally adjudicated or resolved by action of the commission, that the commission would have had jurisdiction over but for the failure of the Commission on Human Rights and Opportunities to comply with the time requirements of chapter 814c of the general statutes.
. . .
 Sec. 3. (NEW) (a) Any action filed pursuant to section 46a-94a, 46a-95 or 4-183 or the general statutes concerning a complaint filed pursuant to section 46a-82 of the general statutes on or before January 1, 1996, in which a final judgment has not been entered prior to the effective date of this act, otherwise valid except for the failure of the Commission on Human Rights and Opportunities to comply with the time requirements of chapter 814c of the general statutes, is validated.
 (b) If any action filed pursuant to section 46a-94a, 46a-95 or 4-183 of the general statutes concerning a complaint filed pursuant to section 46a-82 of the general statutes on or before January 1, 1996, has failed to be tried on its merits because the action has been dismissed by the Superior Court for want of jurisdiction due to the failure of the Commission on Human Rights and CT Page 1675 Opportunities to comply with the time requirements of chapter 814c of the general statutes, a party to the action may, on or before October 1, 1996, petition the court to reopen such action. The court shall set aside the judgment and reinstate the case on the docket.
The first question is whether judgment should enter in this case notwithstanding Public Act 96-241. The plaintiff argues that after the Supreme Court decision, entry of judgment is simply a ministerial act. While that might be true from most decisions rendered by the Supreme Court, it is not true here. This decision arose not from an appeal but from a reservation request brought under General Statutes § 52-235. That statute provides:
 Reservation of questions of law.(a) The Superior Court, or any judge of the court, with the consent of all parties of record, may reserve questions of law for the advice of the Supreme Court or Appellate Court in all cases in which an appeal could lawfully have been taken to said court had judgment been rendered therein.
 (b) The court or judge making the reservation shall, in the judgment, decree or decision made or rendered in such cases, conform to the advice of the supreme court or the appellate court.
Thus, under § 52-235 no final judgment is required to prior to proceeding to the Supreme Court.
While this court has not accomplished an exhaustive search, decisions on reserved questions do not contain rescripts directing the trial court to enter judgment. The Supreme Court renders advice by answering the questions, and thereafter the trial judge applies the advice in deciding the case. W. Maltbie,Connecticut Appellate Practice (1957), §§ 231-234. Here, had there been no legislation prior to the motion for judgment, then the plaintiff's motion for judgment may have been granted; the appeal sustained; and the case returned to the CHRO with an order directing the CHRO to dismiss Hyde's complaint. There is not, however, an order from the Supreme Court to enter judgment forthwith in this case. Moran v. Bentley, 71 Conn. 623 (1899); see Angelsea Productions Inc. v. CHRO, supra, 236 Conn. 701. For these reasons, the court will not enter judgment and will CT Page 1676 consider the application of Public Act 96-241 to this action.
In light of this court's determination that no judgment has entered, it dismisses the plaintiff's argument that the application of Public Act 96-241 to this case raises separation of powers concerns. Conn. Const., amend. XVIII; State v. N.Y.,N.H. H.R. Co., 71 Conn. 43, 49 (1898) ("The legislature cannot overturn judgments, any more than the judiciary can make laws."). Nevertheless, since the CHRO claims with a remarkable attitude of innocence under the circumstances of this case that the Supreme Court has issued a "cruel" decision that was overruled by a "higher tribunal," the court would note that the constitution of 1818 did effect a change in the general assembly's role. As explained by Justice Hamersley in Norwalk Street Ry. Co.'sAppeal, 69 Conn. 576 (1897)[1], "one of the express purposes of the 1818 convention had been to put the three branches of government on equal terms." W. Horton, The Connecticut StateConstitution (1993), p. 82.
Nor does this court agree with the CHRO's argument that Public Act 96-241 is clarifying legislation. Representative Tulisano's words cannot be read to logically conclude so.
 A recent decision of the State Supreme Court came down, indicating surprise that "shall" in the statutes enacted with regard to the CHRO and their elements of time it does mean shall. It was assumed by some who were acting within the CHRO and others that even though we used the word shall in 1991 maybe it meant something else.
 But the fact of the matter is because of those strange time limits that were in the statute for action, I think it was, the title of the case was known as Angelica, a number of — put in jeopardy the claims that are before the commission at this point in time concerning as an example: sexual harassment, racial discrimination, age discrimination, all of the protected classes, protected by CHRO.
39 H.R. Proc., Pt. 15, 1996 Sess., pp. 5186-5187.
Further, in the Angelsea decision, the court logically concluded, "[b]y using the word `shall' to impose deadlines when it revised CT Page 1677 §§ 46a-83 (b) and 46a-84 (b) in 1989 following our interpretation of the same word in other portions of those provisions, the legislature has signaled its approval of our construction of the term `shall' to denote mandatory obligations." Angelsea Productions Inc. v. CHRO, supra,236 Conn. 693. See also Hartford v. Freedom of Information Commission,201 Conn. 421, 427, note 5 (1986).
Notwithstanding this court's disagreement with the CHRO's characterization of the legislative response to the Supreme Court's Angelsea decision, the court agrees that the language of Public Act 96-241 is clear in expressing the intent of the legislature to validate pending complaints. Capalbo v. Planning Zoning Board of Appeals, 208 Conn. 480, 484-489 (1988). In language similar to the bill addressed in Capalbo, Public Act 96-241 validates complaints to the CHRO that would be invalidated by the CHRO's failure to comply with the time requirements addressed in the Angelsea decision. Specifically as to this case, the bill validates such complaints in which a final judgment did not enter prior to the effective date of the act, June 6, 1996. Here, as of June 6, 1996, the Supreme Court had issued its opinion answering the four reserved questions, but no judgment had entered. In Capalbo, before the effective date of that validating statute, the trial court had entered judgment and certification to appeal had been granted. The Capalbo court found that by the term "final judgment" the legislature did not intend to exclude cases on timely appeal from judgments. Id., 487-489. Since there never was a final judgment here, this case is significantly distinguishable from Capalbo[2] and EnfieldFederal Savings Loan Assn. V. Bissell, 184 Conn. 569, 572 ("Had this case gone to final judgment without appeal before the amendment of § 49-14, considerations of good sense and justice would have dictated the conclusion that his rights in that judgment could not thereafter be legislatively abrogated.")
The plaintiff argues that by applying Public Act 96-241 to this case the court will be unconstitutionally depriving it of a vested right in the time limitations as set forth in the prior legislation. To the extent this argument relies on the entry of a final judgment, the court has previously decided this issue against the plaintiff. To the extent that Angelsea claims it has a vested right even without the entry of a final judgment, the court finds otherwise. As noted in this decision, it is clear from the language of CT Page 1678 Public Act 96-241 as well as the legislative history that the legislature intended that this act apply retrospectively.
 We are mindful of the accepted principle that "a statute affecting substantive rights is to be applied only prospectively unless the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively." Turner v. Turner, 219 Conn. 703, 712, 595 A.2d 297
(1991); see also General Statutes § 55-3; Darak v. Darak, 210 Conn. 462, 467-68, 556 A.2d 145
(1989).
Hall v. Gilbert and Bennett Manufacturing Co., Inc.,241 Conn. 282, 302 (1997). Further,
 "We have regularly recognized the right of the legislature retroactively to make legal and regular that which was previously illegal and irregular, provided that vested rights are not unjustly abrogated. C.S.E.A., Inc. v. Connecticut Personnel Policy Board, 165 Conn. 448, 454-55, 334 A.2d 909
(1973); Carvette v. Marion Power Shovel Co., 157 Conn. 92, 95-96, 249 A.2d 58 (1968). . . ." (Citations omitted.) Enfield Federal Savings Loan Assn. v. Bissell, supra, 184 Conn. 5.
Gil v. Courthouse One, 239 Conn. 676, 689 (1997). An earlier Supreme Court decision has language more applicable to the facts of this case. In Massa v. Nastri, 125 Conn. 144, 148 (1939), the court said,
 The rule that laws are not to be construed as applying to cases which arise before their passage is applicable when to disregard it would impose an unexpected liability that if known might have caused those concerned to avoid it.
Angelsea has not shown that, as a result of it reliance on the mandatory time limits as determined by the Supreme Court, it has suffered an unexpected liability it could otherwise have avoided.
The time limitations in which Angelsea claims a vested right are part of a statutory scheme to provide a procedure for processing discrimination complaints to resolution through CT Page 1679 arbitration and administrative adjudication. See AngelseaProductions, Inc. v. Commission on Human Rights Opportunities,supra, 236 Conn. 691-692. As noted by the Court in that decision, the complainant Hyde has other relief available to her under General Statutes § 46a-101 et seq. Id., 699. Accordingly, as in Hartford v. Freedom of Information Commission, supra,201 Conn. 426-427, in enacting Public Act 96-241 the legislature excused the CHRO's failure to comply with procedural requirements that do not directly affect the substantive rights of Angelsea. Because this case had not reached final judgment and because the court finds no vested right in these statutory time limitations, the court finds no unjust abrogation of a vested right held by Angelsea. See Transue v. CHRO, judicial district of Hartford/New Britain at Hartford, docket no. CV96 0564183, CONN. L. RPTR. 505 (December 6, 1996, Maloney, J.) P. 5.
For the foregoing reasons, the motion for judgment is denied. The court grants the motion to dismiss on the ground that this action is moot in light of Public Act 96-241.
DiPentima, J.