[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I STATEMENT OF THE CASE
The town of Thompson issued a certificate of zoning compliance and a building permit to the plaintiffs, Bernice E. and Prescott I-I. Baxter, allowing them to construct a 12 x 20 storage building on their leased property. The Baxters now appeal the decision of the defendant, the Thompson zoning board of appeals (board), overruling the decision of the zoning enforcement officer (ZEO), John E. Mahon, Jr., to refrain from issuing a cease and desist order. In overruling the ZEO's decision, the board ordered that he issue the cease and desist order to the Baxters, directing that they remove the newly constructed storage building. The successful appellants before the board, Godfrey Tscherniak and Sharon A. Rocore, are also named as defendants.
 II FACTS AND PROCEDURAL HISTORY
The Baxters have leased property located at 17AN Quaddick Mountain Road in the town of Thompson since 1967. (Return of Record [ROR], Item M, 6/14/99 Public Hearing Transcript, p. 6.[1]) A nonconforming 4 x 8 shed, having electricity and gas service, existed on this property for many years. (Id., 12.) There is a preexisting nonconforming side yard setback related to the location of this shed. (ROR, Item U, Certificate of Zoning Compliance.)
On May 4, 1998, Prescott Baxter applied for a building permit to CT Page 8138 construct a 12 x 20 storage building in place of the existing nonconforming 4 x 8 shed at an estimated cost of $2189. (ROR, Item U, Application for Plan Examination and Building Permit.) Drawings and specifications for the storage building were attached to the application and show a 12 x 20 x 14.6 Deluxe Estate storage building manufactured by Heartland Industries. (ROR, Item U, Application for Plan Examination and Building Permit; Storage Building Plans.) The application was approved by the building official (BO), Alvin Hill, on the date it was submitted, and permit number 7372 was issued. (Id.) On May 5, 1998, the ZEO approved and issued a certificate of zoning compliance for the new storage building noting that it conformed with all zoning regulations and that side yard setbacks were preexisting. (ROR, Item U, Certificate of Zoning Compliance.) The Baxters explained to the ZEO that they used this property for fishing and might spend an occasional night there.[2]
(ROR, Item M, 5/10/99 Board Meeting Transcript, p. 7; Stipulation of the Parties.)
On May 7, 1998, the Baxters ordered the storage building from Heartland Industries; (ROR, Item U, Order Form); and it was constructed on May 17 and 18, 1998. (ROR, Item M, 6/14/99 Public Hearing Transcript, pp. 9, 17.) The original 4 x 8 shed was moved to another location on the property. (ROR, Item K.) When the construction of the storage building was completed, the actual cost amounted to $5732.71, including the building, the builders, the tubers and the electrician.[3] (ROR, Item M, Checks.)
On June 27, 1998, Tscherniak and Rocore sent a certified letter to the planning and zoning commission complaining about the size of the storage building and the relocation of the 4 x 8 shed. (ROR, Item A.) The matter was brought up and either briefly discussed or postponed at the planning and zoning commission meetings on July, 29, 1998, August 28, 1998, September 28, 1998, October 26, 1998 and November 23, 1998. (ROR, Items B — E and G — I.) At the January 25, 1999 planning and zoning meeting, town attorney St. Onge discussed the possibility of a cease and desist order and explained that the appropriate body for a final decision in this matter was the board. (ROR, Item I, Summary Minutes of the 1/25/99 Meeting.) That same evening, Tscherniak and Rocore gave a hand-written complaint to the ZEO asking that he issue a cease and desist order or that he provide written refusal to issue such an order.[4] (ROR, Item J.) In response to Tscherniak's and Rocore's request, on February 24, 1999, the ZEO sent a cease and desist order to the Baxters mandating that they remove the old 4 x 8 shed from the property; (ROR, Item K); and the Baxters complied with that order and removed the old shed. (ROR, Item M, 6/14/99 Public Hearing Transcript, pp. 10, 13.) There was no mention of the new storage building in the order. (See id.) CT Page 8139
On a date between February 24, 1999, the date of the issuance of the cease and desist order, and April 12, 1999, the date of a planning and zoning meeting, Tscherniak and Rocore filed an application for review (appeal) of the ZEO's decision not to order that the new storage building be removed. (ROR, Item L, Application for Review; Item M, 5/10/99 Board Meeting Minutes, pp. 14-15.) The appeal was not dated, nor was it stamped "received" by the ZEO. (Id.)
At the May 10, 1999 board meeting, the board heard the testimony of Tscherniak and Rocore and a detailed discussion of the circumstances surrounding their appeal ensued.[5] (ROR, Item M, 5/10/99 Board Meeting Transcript.) Although not stated in the section of the verbatim transcript provided to the court as part of the return of record; (see ROR, Item M, 5/10/99 Board Meeting Transcript); the summary minutes reflect that a motion was made and seconded at this meeting to schedule this appeal for a public hearing on June 14, 1999. (ROR, Item R, Summary Minutes of the 5/10/99 Board Meeting.) Notice of the public hearing was published in the Webster Times on June 2, 1999 and June 9, 1999. (ROR, Item S.) The notice stated that the hearing was "for an appeal of the ZEO decision regarding building permit issued for 17AN Quaddick Mountain Road." (Id.) The June 14, 1999 public hearing occurred as scheduled, but the transcript reflects that near the end of the hearing the board voted to postpone its decision on the appeal until the July 12, 1999 meeting. (ROR, Item M, 6/14/99 Public Hearing Transcript, p. 23.) After voting to postpone its decision, the board voted to close the public hearing.[6]
(Id., 23-24.)
Because a quorum of members capable of voting was not present at the board's July 12, 1999 meeting, a special meeting was convened on August 3, 1999. (ROR, Item M, 7/12/99 Board Meeting Transcript; Item X, Notice of Special Meeting.) The board voted four to zero to overrule the ZEO's decision not to issue a cease and desist order requiring removal of the 12 x 20 storage building. (ROR, Item X, 8/3/99 Board Meeting Transcript, p. 4-5.) The board's decision was published in the Webster Times on August 11, 1999. On August 26, 1999, the Baxters filed an appeal of the board's decision in the Putnam Superior Court, with a return date of September 28, 1999.
 III JURISDICTION
Court appeals from administrative agency decisions exist only under statutory authority. Simko v. Zoning Board of Appeals, 206 Conn. 374,377, 538 A.2d 202 (1988). "A statutory right of appeal from a decision of an administrative agency may be taken advantage of only by strict compliance with the statutory provisions by which it is created." CT Page 8140 (Internal quotation marks omitted.) Id. Such provisions "are mandatory and jurisdictional in nature, and, if not complied with, the appeal is subject to dismissal." (Internal quotation marks omitted.) Id.; see alsoCapalbo v. Planning Zoning Board of Appeals, 208 Conn. 480, 485,547 A.2d 528 (1988).
 A Aggrievement
"Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. . . . We traditionally have applied the following two part test to determine whether aggrievement exists: (1) does the allegedly aggrieved party have a specific, personal and legal interest in the subject matter of a decision; and (2) has this interest been specially and injuriously affected by the decision. Proof of aggrievement is, therefore, an essential prerequisite to the court's jurisdiction of the subject matter of the appeal." (Citations omitted; internal quotation marks omitted.) Gladvsz v. Planning ZoningCommission, 256 Conn. 249, 255-56, ___ A.2d ___ (2001).
A lessee of property may be aggrieved and entitled to bring an appeal. See R R Pool Home, Inc. v. Zoning Board of Appeals, 43 Conn. App. 563,569-70, 684 A.2d 1207 (1996). The Baxters have alleged that they are the lessees of the land involved in the board's decision. (Complaint, ¶¶ 1, 2, 3). Mr. Baxter also testified to this fact at trial. A copy of their lease and an invoice for the storage building are also part of the record. (ROR, Item U.) Accordingly, the court finds that the Baxters have properly pleaded and proven aggrievement.
 B Timeliness of the Appeal and Service of Process
An appeal from a decision of a zoning board "shall be commenced by service of process. within fifteen days from the date the notice of the decision was published. . . ." General Statutes § 8-8 (b). The chairperson or clerk of the board and the clerk of the municipality shall be included in such service. General Statutes § 8-8 (e).
On August 3, 1999, the board voted to overrule the ZEO's refusal to issue a cease and desist order. (ROR, Item X, 8/3/99 Board Meeting Transcript. pp. 4-5.) Notice of the board's decision was published on August 11, 1999, in the Webster Times. On August 24, 1999, a true and attested copy of the original citation, appeal and bond was served in the hands of Joseph Garceau, secretary of the board, and service was also left for the town clerk at the town hall. (Sheriffs Return.) Abode CT Page 8141 service was also effectuated upon John Bell, chairperson of the board, Tscherniak and Rocore. (Id.) Accordingly, the court finds that the appeal was timely filed and served upon the appropriate parties.
 IV JUDICIAL REVIEW
"General Statutes § 8-6 entrusts [a zoning] commission with the function of interpreting and applying its zoning regulations." Dimopoulosv. Planning Zoning Commission, 31 Conn. App. 380, 383, 625 A.2d 236, cert. denied, 226 Conn. 917, 628 A.2d 987 (1993). An appeal from an action of a zoning enforcement officer is taken to the zoning board of appeals, which hears and decides the matter de novo. Caserta v. ZoningBoard of Appeals, 226 Conn. 80, 88-89, 626 A.2d 744 (1993). "[T]he trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." Spero v.Zoning Board of Appeals, 217 Conn. 435, 440, 586 A.2d 590 (1991). "The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision." Francini v. ZoningBoard of Appeals, 228 Conn. 785, 791, 639 A.2d 519 (1994). The court may grant relief on appeal only where the local authority has acted illegally, arbitrarily, or in abuse of its discretion. Smith v. ZoningBoard of Appeals, 227 Conn. 71, 80, 629 A.2d 1089 (1993); Frito-Lay,Inc. v. Planning Zoning Commission, 206 Conn. 554, 573, 538 A.2d 1039
(1988).
 V DISCUSSION
The Baxters appeal the decision of the board on two grounds: lack of jurisdiction and estoppel. They allege that the board lacked jurisdiction to hear Tscherniak's and Rocore's appeal because it was untimely. In the alternative, the Baxters allege that they relied upon the appropriate building officials in the town in obtaining their permit and certificate, and to hold them responsible for the erroneous information they received from those officials would be inequitable. The Baxters contend that the board should be estopped from enforcing the town's zoning regulations in this case.
 A The Board's Jurisdiction to Hear the Appeal
First, the Baxters allege that the board lacked jurisdiction to hear Tscherniak's and Rocore's appeal because the appeal was based upon the improper issuance of a building permit and certificate of compliance, both of which were granted ten months before the appeal was filed. The CT Page 8142 Baxters argue that a new appeal period should not commence simply because the ZEO refused to issue a cease and desist order revoking his previous approval; rather, the appeal period should begin to run upon the issuance of those approvals or, at the very least, at the time Tscherniak and Rocore became aware that the approvals had been issued. In sum, the Baxters argue that Tscherniak and Rocore should have appealed the issuance of the building permit and certificate of compliance within the statutory time period, and that they now cannot have a second bite at the apple by basing their appeal on the ZEO's refusal to issue a cease and desist order, which would, in effect, overrule the previous approvals.
The board argues that it had jurisdiction to hear Tscherniak's and Rocore's appeal from the ZEO's refusal to issue a cease and desist order related to the storage building because it was timely filed within thirty days of that refusal. The board argues that Tscherniak and Rocore did not appeal the granting of the certificate or the building permit; they appealed the ZEO's refusal to issue a cease and desist order. In support of that assertion, the board argues that the Baxters did not comply with the certificate after it was issued: "The [storage building] was equipped with 100 amp electrical service, gas, a telephone, a stove, a refrigerator and a chemical toilet. People have slept overnight in it. A water tank has been installed next to it but has not been hooked up. . . . These issues do not test the validity of the Certificate of Zoning Compliance; they test the Baxters' compliance with it and therefore Tscherniak and Rocore's appeal was not a collateral attack on the Certificate itself." (Board's Memorandum, pp. 9-10.)
Tscherniak and Rocore also argue that the Baxters did not build the same building as was represented to the ZEO. They argue: "While the Baxters are entitled to the 30 day appeal protection of section 8-7, CGS, that protection only extends to factual situations where you build what you have represented." (Tscherniak's and Rocore's Memorandum, p. 6.)
"Sections 8-6 (a)(1) and 8-7 of the General Statutes allow the zoning board of appeals to review decisions of the zoning enforcement officer, or official exercising the function of enforcing the zoning regulations, where there is a claim of an error in any order, requirement or decision of that official or agency. When there is an appeal under these provisions, it acts administratively in a quasi-judicial capacity." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 8.6, p. 168, citing Grillo v. Zoning Board of Appeals,206 Conn. 362, 368, 372, 537 A.2d 1030 (1988). "An appeal may be taken to the zoning board of appeals by any person aggrieved or by any officer, department, board or bureau of any municipality aggrieved and shall be taken within such time as is prescribed by a rule adopted by said board, CT Page 8143 or, if no such rule is adopted by the board, within thirty days, by filing with the zoning commission or the officer from whom the appeal has been taken and with said board a notice of appeal specifying the grounds thereof." General Statutes § 8-7. The Thompson zoning regulations provide no alternative time period to that prescribed by General Statutes § 8-7. See Thompson Zoning Regs., article VII, § 3. Accordingly, an aggrieved party may file an appeal of the ZEO's decision within thirty days of that decision. See General Statutes § 8-7.
The Baxters place much emphasis on the case of Mercieri v. Zoning Boardof Appeals, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 444620 (March 11, 1996, Rubinow, J.)' to support their contention that the board did not have jurisdiction to hear Tscherniak's and Rocore's appeal because it was untimely. In Mercieri, a building permit and certificate of compliance were issued to the plaintiffs to construct an addition to their home. Id. Almost three months later, the ZEO issued a cease and desist order prohibiting further work on the addition because the permits were improperly issued, and, on appeal, the board upheld that decision. Id. The Superior Court, however, sustained the plaintiffs' appeal holding that "[t]he defendant clearly failed to comply with the thirty day provision established by § 8-7
of the general statutes, rendering their efforts at contesting the propriety of the original zoning certificate untimely and invalid." Id.
In the present case, the board and Tscherniak and Rocore attempt to distinguish Mercieri by arguing that the appeal to the board was not based upon the erroneous issuance of the certificate of compliance, but, rather, that it was based upon the Baxters' failure to build what they represented. In support of this assertion, they argue that the Baxters proposed to build a shed costing $2189 but ended up with a mini cottage costing $6000. The Baxters contend that this argument is merely an attempt to circumvent the thirty day rule, and that they built exactly what they represented to the BO and the ZEO, and that their storage building is the same building as was shown on the building plans submitted with their applications.
The real issue underlying this claim is whether, in fact, the Baxters built what they represented and were approved to build. If they did build in accordance with their approvals, then Tscherniak's and Rocore's appeal amounts to a backdoor attack on the building permit and certificate of compliance, which, as the Baxters allege, rendered the board without jurisdiction to hear the appeal after the statutory time period. See General Statutes § 8-7; Mercieri v. Zoning Board of Appeals, supra, Superior Court, Docket No. 444620.
The Baxters' applications for a building permit and a certificate of CT Page 8144 compliance proposed the building of a 12 x 20 storage building on sona-tubes, at an estimated cost of $2189. (ROR, Item M, Building Permit Application.) The plans presented with the Baxters' applications show that they proposed to build a 12 x 20 x 14.6 Deluxe Estate storage building, manufactured by Heartland Industries, Inc. (Id.) A sketch of the outside of the building was supplied, as well as the floor plan. (Id.) The plans show, what the court would describe as, a small barn-like structure with a loft. (ROR, Item M, Building Permit Application, 6/14/99 Public Hearing Transcript, p. 11.) The order form for the storage building describes a 12 x 20 x 14.6 "yard barn" at a cost of $2996. (ROR, Item M, Order Form.) Additional costs are shown on the order form for the door and the sona-tubes. (Id.) On the Baxters' invoice, additional charges are reflected in the amount of $829.95 for the loft, $20 for delivery and $230.76 for sales tax. (ROR, Item M, Invoice.) Other dollar amounts are also penciled in, and there was an additional $756 spent for an electrician. (ROR, Item M, Invoice, Checks.) The checks reveal that the actual amount spent totaled $5732.71.[7]
The ZEO testified before the zoning commission at its October 26, 1998 meeting that the Baxters "did not try to sneak anything by" him. (ROR, Item E.) He also testified at the May 10, 1999 board meeting that: "Our Zoning Regulations only allow twenty five percent expansion of a non-conforming use. This is where my error came into place and I'm not ashamed to say it. I feel bad for all parties that were wronged by it, but I made a decision based on the knowledge that I had at the time, that as long as they didn't further encroach on this pre-existing nonconforming site, and setback, that they could go ahead and replace that 6 x 8 [shed] with the 12 x 20 [storage building]. I was wrong. . . . Mr. Tscherniak hired an attorney, and the attorney called it to my attention. When I read the statutes, the statutes did not jive with what I had thought was . . . the case. So in essence, I was wrong. And subsequently, back in January or whenever it was, . . . a handwritten letter [was filed] . . . after one of the P and Z meetings and [Tscherniak and Rocore] . . . requested that I order a Cease and Desist Order to have this building removed from, that I had issued the Certificate of Compliance on. . . . I found it difficult to do, based on the fact the Mr. Baxter came in, in good faith, and asked the Zoning Official, which is myself what, what could he do there. I told, I gave him misinformation. Not intentionally but I did misinform him. Because I was in error, he went ahead and built the building and the only thing that he did which was a violation, was that he moved the shed instead of removing it." (ROR, Item M, 5/10/99 Board Meeting Transcript, pp. 3-4.) Later in the meeting, when questioned by board member Joseph Garceau as to why he was refusing to issue a cease and desist order, the ZEO explained that he was refusing "because my personal feelings are, is that, they didn't do anything, other than what I told them they could CT Page 8145 do." (Id., 10.) The ZEO also acknowledged that he knew that the Baxters' were using a chemical toilet in the storage building. (Id., 12.)
Testimony was also given that the old shed had electricity and gas service, a stove and a refrigerator, and that the new storage building was to be used for the same purposes as the old shed. (ROR, Item M, 6/14/99 Public Hearing Transcript, p. 12.) In addition to these items, the storage building contains the Baxters' ski equipment; (id); and picnic tables, but Mr. Baxter testified that the storage building contains no beds. (Id., 13.) Pictures of the storage building were also submitted at the public hearing. (ROR, Item U, Pictures.) The pictures show a barnlike structure with windows and a door that is similar to that found on the back of a home. (Id.) The door is also very similar to the one on the old shed, but is different from the one depicted on the plans submitted with the Baxters' applications, which showed a large double, barn-style door. (ROR, Item U, Pictures, Plans)
It is apparent to the court that all of the above evidence comports with the Baxters' contention that the 12 x 20 storage building is basically the same building for which they received their approvals, with exception of the differing door style, and the court finds that there was no evidence to the contrary presented to the board. The court also finds that, although the difference between the estimated cost and the actual cost is sizable, the price of the storage building, alone, remained within several hundred dollars of the original estimated cost stated on the Baxters' building permit application.
During the May 10, 1999 public hearing, board member Daniel Roy stated that he thought that the completed storage building was more elaborate than was originally proposed. (ROR, Item M, 6/14/99 Public Hearing Transcript, p. 14.) At the July 12, 1999 board meeting, Roy stated that he walked the property, felt that this was a difficult decision and that it was unfair to make the board decide the issue; he thought the court should make the decision. (ROR, Item M, 7/12/99 Board Meeting Transcript, p. 2.) Board member Raymond Faucher stated that he also walked the property and felt that the storage building was not the same building as was originally proposed because of the difference between the estimated and actual cost. (Id., 4.) Finally, at the August 3, 1999 board meeting, Faucher voted to reverse the ZEO decision not to order removal of the storage building, and Leona Archambault seconded the motion. Faucher then went on to state his reasons for the record: "I don't believe the permit was valid to begin with, because it was taken out as a two thousand dollar building and it turned out to be a six thousand dollar building, which is a totally different thing. The Building Official and the ZEO were in error [by allowing more than a twenty-five percent expansion of a non-conformity]." (ROR, Item X, 8/3/99 Board CT Page 8146 Meeting Transcript.) Archambault stated that her reason for seconding the motion was: "this seems to be more than just a shed. . . . I think that . . . the use of it, my feeling, and personal feeling is that it can, down the line, be something else, become a residence or something. I've seen many sheds, we have one in my yard, and certainly not quite elaborative, that pretty much exposed beams or that's what I think sheds should be. Storage of equipment, not household supplies." (Id., 3-4.) Roy then stated that he "agre[ed] with the issues that Mr. Faucher brought up." (Id., 4.) John Bell then stated that "the shed is pretty elaborate," and that he "concur[red] with Mr. Faucher." (Id.) The board then voted four to zero to overturn the ZEO's decision not to issue a cease and desist order.
It is apparent from the transcript of this meeting that the board believed that the building permit and certificate of approval should not have been issued in the first place, and it is also apparent that this was the basis for the board's overturning the ZEO's decision not to issue a cease and desist order in relation to the storage building. Faucher stated that he didn't think the permit and certificate should have issued, Roy and Bell agreed with him, and Archambault feared that the storage building would be used for a residence at some future time and that it was too elaborate to be a shed. None of the board members found that the Baxters misrepresented the storage building to the BO or the ZEO, nor did they find that the actual storage building was considerably different from that which was proposed on the Baxters' plans, nor does the record reflect that the board had before it any evidence to that effect.
In addition, the original complaint Tscherniak and Rocore made to the planning and zoning commission, on June 27, 1998, stated that the purpose of the letter was to "make a formal complaint/request written clarification to the legality of construction of a "Shed' located on Quaddick Mountain Resort. . . ." (Emphasis omitted.) (ROR, Item A.) They then explained that the new building was considerably larger than the twenty-five percent expansion allowable for a nonconformity. (Id.) On the face of their appeal application, Tscherniak and Rocore state: "On 01-25-99 the applicants requested that the Thompson Zoning Enforcement Officer issue a cease and desist order concerning activities and permits on property leased by Baxter on 02-24-99. The [ZEO] issued a Notice of Violation to Baxter. The applicants hereby request that the Notice Violation be revised in accordance with the attached Request dated 11-16-98." (ROR, Item L.) The attached request explains how the storage building is an illegal expansion of a nonconformity, and that "[t]he May 4, 1998 Building Permit and Zoning Permit should never have been granted. . . ." (Id., 2.) CT Page 8147
The court finds that Tscherniak's and Rocore's appeal constituted a request that the board reconsider the issuance of the building permit and certificate of compliance, and that this is exactly what the board did. In accordance with General Statutes § 8-7, such a request, however, may only be made within thirty days of the issuance of the permit and certificate. See General Statutes § 8-7; Pinchbeck v. Zoning Board ofAppeals, 58 Conn. App. 74, 79, 751 A.2d 849 (2000) ("the thirty day limit of General Statutes § 8-7 is mandatory in nature and . . . any appeal not taken within thirty days is invalid"); Mercieri v. Zoning Board ofAppeals, supra, Superior Court, Docket No. 444620.
Accordingly, the court finds that the board did not have jurisdiction to consider the appeal of the ZEO's decision, which was filed by Tscherniak and Rocore approximately ten months after the Baxters' permit and certificate were issued. The Baxters' appeal is sustained, and the board's decision is overruled.[8]
Judgment may enter accordingly,
Kocay, J.